J-S05039-18

NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| LIONEL MONTELL WATTS, | : | |
| | : | |
| Appellant | : | No. 1362 WDA 2017 |

Appeal from the PCRA Order August 23, 2017
in the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0015439-2010

BEFORE: OLSON, OTT, and STRASSBURGER, J.*

MEMORANDUM BY STRASSBURGER, J.: FILED APRIL 10, 2018

Lionel Montell Watts (Appellant) appeals from the order entered August 23, 2017, dismissing his petition filed under the Post-Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546. We affirm.

The underlying facts of Appellant's case are as follows.

On January 27, 2010, at 1:11 p.m. Adam Flint walked from his home to the Dairy Mart located on Grant Avenue in Duquesne, Allegheny County, Pennsylvania. Outside of the Dairy Mart, Flint encountered Appellant who asked him for a cigarette and a light. Flint went into the Dairy Mart, made his purchase and left the store. He proceeded to Sixth Street to buy a bag [of] marijuana and then walked home. Approximately 10-15 minutes later Flint received a phone call from his grandfather asking him to go play his lottery numbers. Flint left his house by way of Erwin Street, turning left on Edith Street and Huckleberry Alley, making a left onto Meadow Street up to Grant Street to the Dairy Mart.

Flint purchased the tickets and proceeded home the same way he came. As he did so Flint encountered Appellant who was talking on his cell phone. Flint passed Appellant walking in the

_____
* Retired Senior Judge assigned to the Superior Court.

opposite direction down Huckleberry Alley. Appellant turned and followed Flint down Huckleberry Alley. When he turned at the corner of Edith and Erwin Streets, Appellant said to him, "White boy Rick pays good," and shot Flint in his right arm. Flint turned and saw Appellant holding a black semi-automatic weapon and immediately fled. Appellant kept shooting at Flint as he ran to the left side of Erwin Street in an attempt to hide behind parked cars. During this time Flint was shot a second time, the bullet entering through his back and exiting out the front of his abdomen. As Flint neared 117 Erwin Street he saw Appellant turn and run in the opposite direction on Erwin Street making a right onto Edith Street. Flint got to his home at 116 Erwin Street where his girlfriend called for an ambulance and Flint was transported to a hospital.

Detective Thomas DeFelice, a homicide detective with the Allegheny County Police Department, responded to a call for assistance from the Duquesne Police. During his investigation of the crime scene, Detective DeFelice found bullet damage to homes at 101, 103, 107, and 115 Erwin Street. There were 12 shell casings found at the scene.

In reference to Appellant's statement, "White boy Rick pays well," Flint knew a Rick Jacik with whom he had been in an argument … at a bar. [Flint] robbed Jacik of $1200 with a BB gun within a few weeks of this incident. Rick Jacik had shot at [Flint] on Kennedy Avenue in Duquesne in January of 2010.

As a result of being shot twice Flint spent over two months in the hospital. In 2010, he was in the hospital for a total of 299 days. Flint experienced complications that required additional medical procedures to implant stents and open up his bile ducts. The bullet that entered Flint's right arm shattered his humerus bone. The injury to his arm required the insertion of a steel plate and metal rod to stabilize his arm. The bullet that entered Flint's back perforated his liver and exited through the left side of his abdomen.

On February 24, 2010, Detective Zabelsky of the Allegheny County Police Department showed Flint several photo arrays, however, he was heavily medicated and did not make an identification. At that time, due to the serious nature of his injuries, Flint was taking Fentanyl, Dilaudid, Demerol and

Percocet. Flint had to be restrained to his hospital bed because he repeatedly tried to get up as he thought that he was in Las Vegas.

On July 21, 2010, the victim identified Appellant in a photo array and Appellant was arrested and charged [with two counts of aggravated assault, and one count each of criminal attempt (homicide), carrying a firearm without a license, person not to possess a firearm, and recklessly endangering another person].

Commonwealth v. Watts, 82 A.3d 1067 (Pa. Super. 2013) (unreported memorandum at 1-2) (quoting Trial Court Opinion, 10/26/12, at 4–6).

Following a trial, the jury found Appellant guilty of the above-referenced charges. On September 20, 2011, the trial court sentenced Appellant to an aggregate term of not less than 12 nor more than 24 years of incarceration. This Court affirmed Appellant's judgment of sentence on July 16, 2013. Id. Appellant did not file a petition for allowance of appeal.

On July 19, 2014, Appellant timely filed pro se a PCRA petition. Following appointment of counsel, Appellant amended his petition and filed a motion for discovery. On June 19, 2017, the PCRA court denied Appellant's discovery motion. On July 12, 2017, the PCRA court notified Appellant that it intended to dismiss his petition without a hearing pursuant to Pa.R.Crim.P. 907. Appellant did not file a response. By order of August 23, 2017, the PCRA court dismissed Appellant's PCRA petition. Appellant timely filed a notice of appeal. The PCRA court complied with Pa.R.A.P. 1925 by directing our attention to its Rule 907 notice. Appellant was not ordered to file, and did not file, a concise statement of matters complained of on appeal.

On appeal, Appellant sets forth two issues.[1]  In his first issue, Appellant asks this Court to decide whether the PCRA court abused its discretion by dismissing the PCRA petition without a hearing, asserting that he properly established that trial counsel rendered ineffective assistance of counsel when counsel failed to take action regarding a juror who was sleeping during trial. Appellant's Brief at 6.

"On review of orders denying PCRA relief, our standard is to determine whether the PCRA court's ruling is free of legal error and supported by the record."  Commonwealth v. Boyer, 962 A.2d 1213, 1215 (Pa. Super. 2008). Because Appellant challenges the actions of trial counsel, we observe the following.

> It is well-established that counsel is presumed to have provided effective representation unless the PCRA petitioner pleads and proves all of the following: (1) the underlying legal claim is of arguable merit; (2) counsel's action or inaction lacked any objectively reasonable basis designed to effectuate his client's interest; and (3) prejudice, to the effect that there was a reasonable probability of a different outcome if not for counsel's error.
>
> The PCRA court may deny an ineffectiveness claim if the petitioner's evidence fails to meet a single one of these prongs. Moreover, a PCRA petitioner bears the burden of demonstrating counsel's ineffectiveness.

---

[1] Appellant also sets forth an additional issue regarding whether his claims are cognizable under the PCRA.  It is unclear why Appellant did so, as the PCRA court properly analyzed his claims under the PCRA, and Appellant and the Commonwealth agree that Appellant's claims are cognizable under the PCRA. See PCRA Court Opinion, 12/12/2017, at 1-2; Appellant's Brief at 15-16; Commonwealth's Brief at 15-18.

Commonwealth v. Franklin, 990 A.2d 795, 797 (Pa. Super. 2010) (internal citations omitted).

Appellant contends juror number 9 was sleeping during the direct testimony of Detective Zabelsky, whose testimony was pivotal because it concerned the identification of Appellant by the alleged victim. Appellant's Brief at 18. Appellant argues that his trial counsel was ineffective because he did not move for the trial court to question the sleeping juror or request that the court remove and replace the sleeping juror with an alternate juror. Id. at 16. According to Appellant, he was prejudiced by the sleeping juror because "the juror had to rely on the recollection, analysis and weighing of the Commonwealth's evidence by the other jury members." Id. at 18.

The record reveals the following exchange at trial. While at sidebar on another issue following the testimony of Commonwealth witness Detective Zabelsky, Appellant's trial counsel informed the court that "juror number ... 9 is having a real hard time staying awake." N.T., 6/20/2011, at 144. The trial court responded, "All right. Let's keep our eye on that person," and adjourned for a recess. Id. at 145. No further discussion regarding juror number 9 took place on the record.

Despite Appellant's assertion that juror number 9 was asleep and did not hear the testimony of Detective Zabelsky, the discussion on the record does not establish that juror number 9 actually fell asleep or was asleep for a substantial period. Moreover, even if Appellant were to establish at an

evidentiary hearing that the juror was sleeping during Detective Zabelsky's testimony, Appellant would not be able to "demonstrate that but for the sleeping juror, the outcome of the trial would have been different." Commonwealth v. Lawson, 762 A.2d 753, 757–58 (Pa. Super. 2000). As in Lawson, the Commonwealth presented ample evidence to convict Appellant, including the testimony of Flint.

Specifically, Flint identified Appellant in court as the person who shot him. N.T., 6/20/2011, at 63. He also testified directly regarding his opportunity to view Appellant at the scene and his identification of Appellant in the photo array Detective Zabelsky showed him on July 21, 2010. Id. at 62-70, 76-77, 79-83. Flint described his heavily medicated condition on February 24, 2010, the day Detective Zabelsky first showed him a photo array, and acknowledged his failure to identify Appellant in that array. Id. at 75-76. On cross-examination, Flint conceded that despite his seeing double when he was shown the February 24, 2010 photo array, he was still able to identify Rick Jacik in the photo array. Id. at 85-87. Detective Zabelsky's testimony was largely cumulative of Flint's. See id. at 123-40 (recounting Flint's poor condition on February 24, 2010, Flint's failure to identify Appellant on February 24, 2010, Flint's identification of Jacik on February 24, 2010, and Flint's identification of Appellant on July 21, 2010). Thus, even if juror number 9 was sleeping during Detective Zabelsky's testimony, Appellant cannot

establish prejudice by his counsel's failure to address further the conduct of juror number 9.

In his second issue, Appellant argues that the PCRA court abused its discretion by denying his motion for discovery during the PCRA proceedings. Appellant's Brief at 6. This Court has summarized the law regarding discovery requests in PCRA proceedings as follows.

> In PCRA proceedings, discovery is only permitted upon leave of court after a showing of exceptional circumstances. 42 Pa.C.S.[] § 9545(d)(2); Pa.R.Crim.P. 902(E)(1). The PCRA and the criminal rules do not define the term "exceptional circumstances." Rather, it is for the trial court, in its discretion, to determine whether a case is exceptional and discovery is therefore warranted.

> We will not disturb a court's determination regarding the existence of exceptional circumstances unless the court abused its discretion. An abuse of discretion is not a mere error in judgment. Instead, it is a decision based on bias, ill will, partiality, prejudice, manifest unreasonableness, or misapplication of law. Moreover, ... the appellant has the duty to convince us an abuse occurred.

Commonwealth v. Frey, 41 A.3d 605, 611 (Pa. Super. 2012) (some citations omitted).

The specific discovery sought by Appellant in his motion was an "investigation and review of ballistics evidence, in the possession of, maintained or stored by the District Attorney's Office of Allegheny County, the Allegheny County Crime Lab, prosecutors and/or any of the police officers, detectives, police stations, interns, investigators or other agents of the Commonwealth who were involved in [Appellant's] case...." Motion for Discovery, 4/12/2017, at ¶ 4. On appeal, Appellant specifies that he is

seeking "leave of court to have the ballistics evidence tested for fingerprints." Appellant's Brief at 23.

Appellant argues that the PCRA court abused its discretion by denying his motion for discovery during the PCRA process because exceptional circumstances warranted such discovery. Appellant's Brief at 19-23. According to Appellant, this case "hinged on highly contested identification evidence" and fingerprint testing of cartridges found at the scene could have revealed prints belonging to someone other than Appellant. Id. at 19-20.

Appellant's original discovery request was premised upon his allegation that the Commonwealth withheld exculpatory evidence in violation of Brady v. Maryland, 373 U.S. 83 (1963), by not disclosing testing of the cartridges and/or his allegation that counsel rendered ineffective assistance of counsel. Motion for Discovery, 4/12/2017, at ¶ 4. Appellant admits that the Commonwealth never tested the cartridges for fingerprints and has abandoned his Brady claim. Appellant's Brief at 22-23. Therefore, the only purpose of the discovery request would be to establish that his trial counsel rendered ineffective assistance of counsel by stipulating to the crime lab report regarding 12 spent 9 millimeter cartridge casings found at the scene of the shooting and not moving the court to have an expert examine the cartridges for the presence of fingerprints. Id. at 11-22. According to Appellant, if the cartridges contained fingerprints that did not belong to him, it could have "benefited [his] defense." Id. at 22.

However, Appellant has waived any claim regarding counsel's ineffectiveness as to the cartridges, as such a claim was neither presented in the statement of questions involved in his brief nor fairly suggested thereby. See Pa.R.A.P. 2116(a) ("The statement of the questions involved must state concisely the issues to be resolved.... No question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby.").

Even if he had not waived his ineffectiveness claim regarding the cartridges, Appellant cannot establish that he was prejudiced by the stipulation of the report and the failure to investigate whether the cartridges contained fingerprints. The absence of Appellant's fingerprints on the cartridges is not exculpatory per se. See Commonwealth v. Wright, 388 A.2d 1084, 1086 (Pa. Super. 1978) ("[T]he absence of appellant's fingerprints is not exculpatory per se and might be explained [by] any one of many reasons consistent with his guilt."). Here, Flint identified Appellant in both out-of-court and in-court identifications, which were made after an opportunity to view Appellant during several encounters. Thus, even if counsel had discovered that the cartridges did not contain Appellant's fingerprints and/or contained someone else's fingerprints, a different outcome at trial is still not reasonably probable.

Based on the foregoing, because Appellant has waived the underlying claim upon which his request for discovery would be based, and alternatively

because he was not prejudiced by counsel's alleged ineffectiveness, Appellant is due no relief on his discovery request. Furthermore, a fishing expedition for potentially exculpatory evidence is not sufficient to establish exceptional circumstances warranting discovery, particularly when no facts of record reasonably support the belief that the requested discovery may lead to evidence exculpating Appellant. Frey, 41 A.3d at 612. Accordingly, Appellant has failed to convince us that the PCRA court's determination that exceptional circumstances did not exist was "based on bias, ill will, partiality, prejudice, manifest unreasonableness, or misapplication of law." Id. at 611.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/10/2018