J-S81002-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| CLARENCE CRESPO | |
| Appellant | No. 1192 MDA 2018 |

Appeal from the PCRA Order Entered June 19, 2018
In the Court of Common Pleas of York County
Criminal Division at No(s): CP-67-CR-0003790-2012

BEFORE:  STABILE, DUBOW, JJ., and STEVENS, P.J.E.[*]

MEMORANDUM BY STABILE, J.:                 **FILED APRIL 11, 2019**

Appellant, Clarence Crespo, appeals from the June 19, 2018 order dismissing his petition pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-46.  We affirm.

On May 17, 2012, the Commonwealth charged Appellant with rape of a child, involuntary deviate sexual intercourse, aggravated indecent assault, indecent assault of a victim less than 13 years old,[1] and related offenses.  The victim is Appellant's stepdaughter.  A jury found Appellant guilty of all charges at the conclusion of trial on October 2, 2013.  On October 7, 2014, the trial court, relying in part on then-extant mandatory minimum sentences, imposed

_____

[*] Former Justice specially assigned to the Superior Court.

[1]  18 Pa.C.S.A. §§ 3121(c), 3123, 3125, 3126(a)(7), respectively.

an aggregate sentence of 32 years and eight months to 65 years and six months of incarceration. On June 10, 2015, this Court vacated Appellant's judgment of sentence in accord with **Alleyne v. United States**, 133 S. Ct. 2151 (2013) and **Commonwealth v. Wolfe**, 106 A.3d 800 (Pa. Super. 2014), **appeal dismissed**, 145 A.3d 727 (Pa. 2016). On October 25, 2016, the trial court imposed the same term of incarceration without reference to any mandatory minimum. Appellant did not file a direct appeal from that sentence. Instead, he filed a timely counseled PCRA petition on June 12, 2017. The PCRA court issued a notice of intent to dismiss, pursuant to Pa.R.Crim.P. 907, on December 6, 2017, and an order dismissing the petition on December 27, 2017.

Subsequently, on January 23, 2018, the PCRA court entered orders that vacated its December 27, 2017 order,[2] permitted Appellant's counsel to withdraw, and appointed new counsel. New counsel filed an answer to the Rule 907 notice on March 14, 2018. The PCRA court entered the order on appeal on June 18, 2018. This timely appeal followed.

Appellant presents two issues:

---

[2] The PCRA court had jurisdiction to vacate its prior order because Appellant had yet to file a notice of appeal, and because fewer than 30 days had passed since entry of the order. 42 Pa.C.S.A. § 5505 ("Except as otherwise provided or prescribed by law, a court upon notice to the parties may modify or rescind any order within 30 days after its entry, notwithstanding the prior termination of any term of court, if no appeal from such order has been taken or allowed.").

- 2 -

1. Trial counsel was ineffective for failing to obtain a medical expert to review the victim's medical documentation and testify at trial. Trial counsel was not able to sufficiently cross-examine the victim under the circumstances, despite trying to admit medical records through an unqualified CAC interviewer in order to impeach the victim's credibility. There was no reasonable strategic basis not to obtain a medical expert given this attempt to use the medical documentation during trial.

2. The PCRA court erred in denying Appellant's request for discovery consisting of reviewing CYF documents *in camera*, which trial counsel reviewed, however PCRA counsel could not review in order to determine whether trial counsel's decision not to use the records to cross examine defendant's [sic] mother and [Appellant] had a reasonable strategic basis.

Appellant's Brief at 4.

"In PCRA proceedings, an appellate court's scope of review is limited by the PCRA's parameters; since most PCRA appeals involve mixed questions of fact and law, the standard of review is whether the PCRA court's findings are supported by the record and free of legal error." **Commonwealth v. Pitts**, 981 A.2d 875, 878 (Pa. 2009). In order to establish that trial counsel rendered constitutionally ineffective assistance, a PCRA petitioner must plead and prove 1) that the underlying claim is of arguable merit; 2) that counsel had no reasonable strategic basis in support of the disputed action or inaction; and 3) that but for counsel's error, the outcome of the proceeding would have been different. **Commonwealth v. Reyes-Rodriguez**, 111 A.3d 775, 779 (Pa. Super. 2015) (*en banc*). We presume counsel was effective; the petitioner bears the burden of proving otherwise. **Id.**

Appellant's first argument is that trial counsel was ineffective for failing to obtain a medical expert to review the victim's medical records. To prevail on this claim, a petitioner "must demonstrate that an expert witness was available who would have offered testimony designed to advance [the petitioner's] cause." *Commonwealth v. Chmiel*, 30 A.3d 1111, 1143 (Pa. 2011).

Appellant claims trial counsel should have had an expert explain to the jury the significance of the victim's March 2010 medical examination. The result of that examination, in the victim's words on cross-examination, was that she was "still a virgin, and nothing was wrong with my private area." N.T. Trial, 9/30/13–10/2/13, at 185. The trial court denied defense counsel's motion to admit into evidence a medical record indicating that Appellant's hymen was intact. Appellant now argues that a medical expert, had trial counsel procured one, could have explained the significance of the victim's medical examination, thereby refuting the victim's allegations of sexual assault.

PCRA counsel proffered an expert, but the PCRA court reviewed the expert's curriculum vitae and noted that the expert had no obvious experience in cases of child sexual abuse. PCRA Order, 6/18/18, at 1-2. Appellant has therefore failed to establish that an expert was available. Moreover, it is not clear how an expert would have been helpful. The victim testified that Appellant made her watch pornographic movies depicting adults having sex.

*Id.* at 136-37. Appellant told the victim to be like the girls in the videos before forcing her to perform oral sex on him (137, 139-141, 145). The oral sex occurred more than twenty times. *Id.* at 141. Appellant also fondled the victim over her clothes on her "private areas," including her chest and vagina. *Id.* at 142. This over-the-clothes touching also occurred more than twenty times. *Id.* Appellant sometimes held a knife or a gun in his hand during these encounters, and sometimes held the knife to the victim's neck or the gun to the victim's head. *Id.* at 148-50. On one occasion, Appellant tried to penetrate the victim's anus with his penis. *Id.* at 153. On more than one occasion, Appellant inserted one or two fingers into the victim's vagina. *Id.* at 155-56.

Thus, most of the assaults the victim described did not involve penetration of her vagina. When penetration occurred, it was one or two of Appellant's fingers. The PCRA court therefore found that there was not necessarily any inconsistency between the victim's account of the various assaults and her statement that "nothing was wrong with my private area," and it is not clear that expert testimony regarding the victim's intact hymen would have undermined the victim's account of digital penetration.[3] In any

---

[3] The PCRA court cites a non-precedential memorandum in which a party produced evidence that an intact hymen does not preclude the possibility of vaginal penetration by a finger. *Commonwealth v. Garcia*, 2013 WL 11250291 (Pa. Super. November 14, 2013). *Garcia* is not necessary to

event, the jury, having heard the victim's account of a medical examination showing nothing wrong, was free to determine whether that information undermined her credibility.

In summary, Appellant has failed to establish that an expert was available, or that expert testimony would have been helpful.[4] Appellant has not established that this issue is of arguable merit, nor has he established how the absence of expert testimony was prejudicial. The PCRA court did not err in denying relief on Appellant's claim of ineffective assistance of counsel.

Next, Appellant asserts that the PCRA court erred in denying his request for discovery of records from York County Children Youth and Families ("CYF") related to the victim's mother ("Mother"). The record indicates that, on February 11, 2013, the trial court granted trial counsel's request to review certain CYF records. Trial counsel did not introduce any CYF records at trial, although trial counsel did cross-examine Mother on her history with CYF. PCRA counsel wishes to review the records in order to determine whether trial

_____

support our conclusion that Appellant has failed to establish prejudice in this case.

[4] Appellant also argues, in a single sentence, that the PCRA court erred in denying his request for funds to hire an expert. Appellant's Brief at 17-18. Appellant does not develop any legal argument in support of this claim, in violation of Pa.R.A.P. 2119(b). Furthermore, as explained in the main text, Appellant proffered an unqualified expert and Appellant has not established how expert testimony would have been helpful. We discern no reason why the PCRA court should have granted Appellant's request for funds.

counsel was ineffective for failing to use CYF records to impeach Mother during on cross-examination.

Rule 902 of the Pennsylvania Rules of Criminal Procedure governs discovery on collateral review. Rule 902 provides, with an exception not relevant here, that "no discovery shall be permitted at any state of the proceedings, except upon leave of court after a showing of exceptional circumstances." Pa.R.Crim.P. 902(E)(1). There is no statutory definition of exceptional circumstances and therefore the PCRA court must determine, in its discretion, whether a case is exceptional. **Commonwealth v. Frey**, 41 A.3d 605, 611 (Pa. Super. 2012), **appeal denied**, 65 A.3d 413 (Pa. 2013). We will not disturb the PCRA court's decision absent an abuse of discretion. **Id.** "[M]ere speculation that exculpatory evidence might exist does not constitute an exceptional circumstance warranting discovery." **Id.** at 612 (citing **Commonwealth v. Dickerson**, 900 A.2d 407, 412 (Pa. Super. 2006), **appeal denied**, 911 A.2d 933 (Pa. 2006)); **see also Commonwealth v. Williams**, 86 A.3d 771, 790 (Pa. 2014) (finding no exceptional circumstances where, among other things, the petitioner made a purely speculative claim that the requested material would contain exculpatory evidence); **Commonwealth v. Watley**, 153 A.3d 1034, 1048-49 (Pa. Super. 2016) (finding no exceptional circumstances where the petitioner sought evidence that was not necessarily exculpatory), **appeal denied**, 169 A.3d 574 (Pa. 2017).

*Frey* provides a rare example of the existence of exceptional circumstances under Rule 902. In *Frey*, the defendant, Duane Lee Frey, was tried and convicted of murder before investigators found the body of the victim, Hopethan Johnson. *Id.* at 611. Investigators later discovered and identified Johnson's remains and provided Frey a forensic report, which Frey believed cast doubt on whether Johnson was killed before Frey was incarcerated. *Id.* at 608. Furthermore, the forensic report revealed different sized shotgun pellets—possibly indicating more than one shooter—whereas the Commonwealth tried Frey on the theory that he was the only shooter. *Id.* at 608. Frey filed a PCRA petition alleging newly discovered facts, and he requested discovery of certain documents related to the Commonwealth's investigation of the murder of Stacey Farmer, which was ongoing at the time. *Id.* at 608-09, 613. Evidence from Frey's prosecution revealed that Johnson might have sold drugs to Frey from Farmer's residence. *Id.* at 608. Likewise, Farmer might have been a suspect in Johnson's death. *Id.* at 607. Johnson's cell phone and motorcycle—with shotgun pellets embedded in it—were discovered at Farmer's residence shortly after Johnson's disappearance. *Id.* at 607. Farmer was shot and killed after police took Frey into custody for Johnson's murder. *Id.* at 608. Frey posited that an unknown party was responsible for both murders, and that discovery of certain information in the Farmer file could help him prove it. *Id.* at 608. The PCRA court, while expressing skepticism that Frey would ultimately prevail, reasoned that it was

possible that an unknown person was involved in both murders, and thus deemed the case an exceptional one. *Id.*

The Commonwealth appealed the PCRA court's order, and this Court affirmed.[5] This Court acknowledged the unusual circumstance of a murder conviction without a body, and we acknowledged the plausibility of Frey's theory that the Johnson and Farmer murders were related. *Id.* at 611-12. We rejected the Commonwealth's argument that Frey was engaging in a fishing expedition, and that his hope of finding exonerating evidence from the Farmer file was merely speculative. *Id.* at 612. The facts suggested a possible link between the two murders, and Frey could not have committed the Farmer murder. *Id.*

The present circumstances are vastly different. In essence, Appellant hopes CYF records will establish whether trial counsel could have done a better job of cross-examining Mother on a tangential issue. At trial, Mother admitted her prior involvement with CYF, but claimed she could not recall why her children were sent to live with their grandmother in 2000. N.T. Trial, 9/30/13–10/2/13, at 249-50. Thus, the jurors were aware of Mother's prior involvement with CYF and that her children were taken away from her, and they could consider that information in assessing Mother's credibility if they wished to do so. It is not clear what trial counsel had to gain from exploring

---

[5] We accepted review under the collateral order doctrine. *Id.* at 609-10.

- 9 -

that issue further. Indeed, the trial court instructed counsel to "move on." *Id.* at 250. Furthermore, Appellant fails to explain any legal basis upon which a trial court should have permitted him to explore the circumstances surrounding Mother's loss of custody of her children—in 2000—at a 2013 trial for Appellant's sexual abuse of a daughter who had yet to be born in 2000.

Appellant's discovery request, unlike the one at issue in *Frey*, is an obvious fishing expedition. Trial counsel procured records of Mother's involvement with CYF and cross-examined her on the subject. PCRA counsel's hope of finding damaging information that trial counsel missed is purely speculative. Frey had specific reasons for his discovery requests—the requested evidence might have been relevant to a new theory of defense arising from the discovery of the victim's body. Appellant, in contrast, complains of a "Catch-22" because he cannot explain why he needs the CYF records unless he reviews them first. Appellant's Brief at 20-21. To accept this argument would be to ignore Rule 902's exceptional circumstances requirement. Any petitioner could make a similar argument in any case. We discern no abuse of discretion in the PCRA court's refusal to permit discovery under Rule 902.

In summary, we have found no merit to Appellant's assertion of ineffective assistance of counsel, and we have concluded that the PCRA court did not abuse its discretion in refusing to permit discovery under Rule 902. We therefore affirm the order dismissing Appellant's PCRA petition.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 04/11/2019