J-S15038-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CHARLESTAE TAGGART | : | |
| | : | |
| Appellant | : | No. 1925 EDA 2021 |

Appeal from the PCRA Order Entered August 20, 2021
In the Court of Common Pleas of Chester County
Criminal Division at No(s): CP-15-CR-0003001-2014

BEFORE: NICHOLS, J., MURRAY, J., and SULLIVAN, J.

MEMORANDUM BY SULLIVAN, J.: **FILED SEPTEMBER 28, 2022**

Charlestae Taggart ("Taggart") appeals from the order dismissing his petition filed pursuant to the Post Conviction Relief Act ("PCRA").[1]  We affirm.

This Court previously summarized the factual background of this matter as follows:

> [O]n August 16, 2014, police executed a search warrant at 35 Foundry Street, Coatesville, Chester County.  During the search of the residence, the officers located [Taggart] sleeping, naked, and in bed with a female friend.  As a safety precaution, the officers attempted to place [Taggart] in custody during the search.  [Taggart] resisted the officers' attempt to place him in custody by repeatedly failing to comply with the officers' verbal commands and not allowing them to restrain him.  Ultimately, it took three officers and the repeated use of a taser to subdue [Taggart] so that he could be placed in custody.
>
> After [Taggart] was placed in custody and the residence was secured, the officers conducted the search.  During the search, the officers recovered four hundred fourteen (414) bags of heroin,

---

[1] **See** 42 Pa.C.S.A. §§ 9541-9546.

weighing 10.95 grams, five (5) bags of cocaine, weighing 12.61 grams, a fully loaded and stolen Ruger []9 millimeter handgun with an extended magazine, two different types of ammunition, cutting agents, scales, and hundreds of baggies commonly used to package cocaine and heroin.

*Commonwealth v. Taggart*, 178 A.3d 205 (Pa. Super. 2017) (unpublished memorandum at *1-2).

Police arrested Taggart and charged him with various firearms, drug, and related offenses, including possession with intent to deliver ("PWID") heroin and cocaine. Taggart filed a motion to suppress which he later withdrew. Taggart then filed an amended motion to suppress which the trial court denied following a hearing. The Commonwealth submitted swabs from the firearm, the ammunition in the clip of the firearm, and the knotted area of one of the bags of cocaine to the Pennsylvania State Police Crime Lab ("Crime Lab") for DNA testing and comparison with a buccal sample obtained from Taggart. The matter then proceeded to a jury trial.

At trial, the Commonwealth presented the expert testimony of Jillian Crouch, a forensic DNA scientist, who testified regarding the DNA testing performed on the swabs taken from the firearm, ammunition, and the bag of cocaine. Ms. Crouch testified that "regular" or "human" DNA testing performed on the DNA taken from the ammunition and the bag of cocaine indicated that the amounts of DNA retrieved were insufficient to permit interpretable results. *See* N.T., 11/12/15, at 44-45, 48-53. She further testified that that "regular" or "human" DNA testing performed on the DNA

taken from the firearm contained a complex mixture of at least four people and was uninterpretable. *Id*. at 48-50. Accordingly, Ms. Crouch explained that the Crime Lab used "y-DNA" testing, in which the y chromosomes (which only males carry) in the questioned sample are compared with the y chromosomes in the known sample. *Id*. at 45-46. Ms. Crouch explained that y-DNA testing of the DNA taken from the firearm yielded a mixture of at least three persons with the primary contributor not being Taggart. *Id*. at 49. Ms. Crouch further explained that y-DNA testing of the DNA taken from the ammunition and bag of cocaine yielded a match in nine out of sixteen areas such that Taggart and his paternally related male relatives (with the same y chromosome as Taggart) could not be excluded from the pool of individuals who had potentially touched those items. *Id*. at 50-53, 58.

At the conclusion of trial, the jury convicted Taggart of persons not to possess firearms, receiving stolen property (firearm), possession of a controlled substance (cocaine), possession of a controlled substance (heroin), possession of drug paraphernalia, and resisting arrest. The jury found Taggart not guilty of the PWID charges. On January 19, 2016, the trial court sentenced Taggart to an aggregate prison term of eight and one-half to eighteen years. This Court affirmed the judgment of sentence, and our Supreme Court denied allowance of appeal on August 7, 2018. *See Taggart*, 178 A.3d 205 (unpublished memorandum), *appeal denied*, 190 A.3d 1128 (Pa. 2018). Taggart did not seek review in the United States Supreme Court.

On October 31, 2019, Taggart filed a timely PCRA petition.[2] Taggart also filed a motion for discovery of items in the district attorney's possession, which the PCRA court initially granted. Specifically, Taggart requested, *inter alia*, hand-written bench notes for any serologic and/or DNA testing performed, worksheets reflecting any serologic and/or DNA testing performed, hard copies of all chromatographic data, statistical calculations worksheets and data for all tested samples, all case related communications between laboratory personnel and outside parties, copies of all computer data files created during the DNA testing, copies of all video and photo files documenting the crime scene and collection of evidence, copies of all protocols and procedures for serologic and DNA testing, chain of custody documents. In response, the prosecutor indicated that the majority of the requested materials were not in the district attorney's immediate possession. Taggart then filed another motion for discovery directed to the Pennsylvania State Police, Bureau of Forensic Services, which was the entity in charge of the DNA testing. The PCRA court denied the second motion for discovery. Taggart thereafter filed an amendment to his petition. The Commonwealth filed a response in which it requested summary dismissal. Taggart filed a reply, and

_____

[2] As Taggart did not seek review in the United States Supreme Court, his judgment of sentence became final on November 5, 2018, when the time for seeking such review expired. **See** 42 Pa.C.S.A. § 9545(b)(3). Taggart had until November 5, 2019 to file the instant petition. **See id**. § 9545(b)(1). Thus, his petition filed on October 31, 2019, was timely.

the Commonwealth filed a further response. The PCRA court thereafter issued a Pa.R.Crim.P. 907 notice of its intent to dismiss the petition without a hearing. Taggart filed a response to the court's Rule 907 notice. On August 20, 2021, the PCRA court entered an order dismissing Taggart's petition. Taggart filed a timely notice of appeal, and both he and the PCRA court complied with Pa.R.A.P. 1925.[3]

Taggart raises the following issues for our review:

I.      Did the PCRA court err by concluding that trial counsel was not ineffective for failing to obtain independent expert review of the DNA testing relied upon by the prosecution?

II.     Did the PCRA Court err in concluding that trial counsel was not ineffective, despite her neglecting to seek disclosure of those persons besides [Taggart] within the testing authorities' database alleged to have matched the y-chromosome DNA pattern found on the gun and bag of cocaine?

III.    Did the PCRA Court err by concluding that trial counsel was not ineffective for stipulating to the proper handling of the DNA samples – and in holding the issue waived?

IV.     Did the PCRA court err by concluding that [trial] counsel was not ineffective for failing to make timely objection to inaccurate statements by the prosecutor during opening and closing, and by the witness Detective [Shannon] Miller, to the effect that [Taggart's] DNA was found on the gun?

V.      Did the PCRA Court err by failing to find that trial counsel was ineffective for arguing to the jury, contrary to the evidence, that [Taggart] was conclusively excluded by the DNA evidence, thus weakening the credibility of the defense?

_____

[3] In its Pa.R.A.P. 1925(a) opinion, the PCRA court directed this Court to its Rule 907 notice and its August 20, 2021 order dismissing Taggart's petition.

VI. Did the PCRA Court err by failing to find that trial counsel was ineffective for putting on evidence as to the number of maternally-related rather than paternally related relatives, thus weakening the credibility of the defense?

VII. Did the PCRA Court err by failing to find ineffective assistance of [trial] counsel based on the aggregate prejudice suffered due to the individual instances of ineffectiveness set forth above?

VIII. Did the trial court err by denying [Taggart's] amended petition for discovery, thus preventing PCRA counsel from meaningfully reviewing the stewardship of trial counsel?

Taggart's Brief at 4-6 (unnecessary capitalization omitted, issues reordered for ease of disposition).

Our standard of review of an order dismissing a PCRA petition is well-settled:

> We review an order dismissing a petition under the PCRA in the light most favorable to the prevailing party at the PCRA level. This review is limited to the findings of the PCRA court and the evidence of record. We will not disturb a PCRA court's ruling if it is supported by evidence of record and is free of legal error. This Court may affirm a PCRA court's decision on any grounds if the record supports it. Further, we grant great deference to the factual findings of the PCRA court and will not disturb those findings unless they have no support in the record. However, we afford no such deference to its legal conclusions. Where the petitioner raises questions of law, our standard of review is *de novo* and our scope of review plenary.

***Commonwealth v. Ford***, 44 A.3d 1190, 1194 (Pa. Super. 2012) (citations omitted).

Additionally, when a petitioner alleges trial counsel's ineffectiveness in a PCRA petition, he must prove by a preponderance of the evidence that his

conviction or sentence resulted from ineffective assistance of counsel "which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S.A. § 9543(a)(2)(ii). The petitioner must also demonstrate:

> (1) that the underlying claim has arguable merit; (2) that no reasonable basis existed for counsel's actions or failure to act; and (3) that the petitioner suffered prejudice as a result of counsel's error. To prove that counsel's chosen strategy lacked a reasonable basis, a petitioner must prove that an alternative not chosen offered a potential for success substantially greater than the course actually pursued. Regarding the prejudice prong, a petitioner must demonstrate that there is a reasonable probability that the outcome of the proceedings would have been different but for counsel's action or inaction. Counsel is presumed to be effective; accordingly, to succeed on a claim of ineffectiveness[,] the petitioner must advance sufficient evidence to overcome this presumption.

*Commonwealth v. Johnson*, 139 A.3d 1257, 1272 (Pa. 2016) (internal citations and quotation marks omitted). A failure to satisfy any prong of the test for ineffectiveness will require rejection of the claim. *See Commonwealth v. Martin*, 5 A.3d 177, 183 (Pa. 2010).

In his first issue, Taggart contends that trial counsel was ineffective for failing to retain a defense expert to independently evaluate the DNA testing relied upon by the prosecution. The mere failure to obtain an expert rebuttal witness is not ineffectiveness. *See Commonwealth v. Chmiel*, 30 A.3d 1111, 1143 (Pa. 2011). Instead, a PCRA petitioner must demonstrate that an expert witness was available who would have offered testimony designed to

advance the petitioner's cause. *Id*. Further, trial counsel need not introduce expert testimony on his client's behalf if counsel is able effectively to cross-examine prosecution witnesses and elicit helpful testimony. *Id*.

Taggart claims that, when trial counsel was retained, she had "the better part of a month" before trial in which to obtain the necessary information for an independent analysis of the DNA evidence by a defense expert or seek a continuance. Taggart's Brief at 20-21. Taggart explains that he retained an expert, Theodore D. Kessis, Ph.D., to evaluate whether a defense expert witness would have advanced his case at trial. Taggart maintains that Dr. Kessis provided a statement in which he concluded that, in order to make such a determination, additional information was necessary to adequately evaluate the Commonwealth's evidence, including bench notes, worksheets, chromatographical data, worksheets, data files, protocols and procedures in use by the laboratory involved, conditions of storage of the samples, and chain of custody. Taggart submits that Dr. Kessis's conclusion demonstrates that trial counsel was ineffective for failing to retain a DNA expert so that she could have credibly requested such information from the prosecution and, if needed, request a continuance to have the information evaluated.

The PCRA court considered Taggart's first issue and determined that Dr. Kessis's statement failed to establish that the underlying claim was of arguable merit. *See* Rule 907 Notice, 3/16/21, n.4 (at 8). The PCRA court reasoned that Dr. Kessis's statement was based on "pure conjecture and speculation"

and "neither offers a proper expert opinion nor is based upon facts of record." *Id*. The PCRA court concluded that because Dr. Kessis was unable to contradict the Commonwealth's DNA expert or offer any expert opinion that would have changed the outcome of trial, his testimony would have been irrelevant and inadmissible at trial. *Id*.[4]

We discern no abuse of discretion by the PCRA court in reaching its determination that Taggart failed to establish the first prong of the ineffectiveness test. At its core, the statement by Dr. Kessis provides nothing more than speculation that, if additional notes, worksheets, data files, storage conditions, chain of custody, and other data had been provided by the prosecution or state police, Dr. Kessis (or another expert) *might* have been able to find a basis to challenge the Commonwealth's DNA evidence. Such speculation falls woefully short of Taggart's burden to prove that his underlying claim—that independent expert evaluation was necessary—has arguable merit. On the record before us, Taggart has not established that any expert witness was available who would have offered testimony designed to

_____

[4] The PCRA court additionally determined that Taggart failed to establish that trial counsel had no reasonable basis for not calling an independent DNA expert, and that the absence of a defense expert may have inured to Taggart's benefit. *See* Rule 907 Notice, 3/16/21, n.4 (at 8). However, we need not address this additional ruling on Taggart's first issue as the failure to satisfy any prong of the ineffectiveness test will result in the failure of the claim. *See Martin*, 5 A.3d at 183

advance his cause. **See Chmiel**, 30 A.3d at 1143. For these reasons, Taggart's first issue warrants no relief.

In his second issue, Taggart contends that trial counsel was ineffective for failing to request data to investigate the identity of other potential suspects, including Taggart's father, Taggart's paternal male relatives, and Evonne Milbourne, the woman who was with Taggart at the time of his arrest. Taggart additionally contends that, although the y-DNA pattern found on the ammunition was found in ten out of 25,665 individuals within the DNA database and the y-DNA pattern found on the bag of cocaine was found in two out of 25,643 individuals within the DNA database, none of these individuals was ever investigated. Taggart asserts that counsel's failure "to request the necessary data to investigate the identity of these other suspects prejudiced him by depriving him of an important line of defense which had the potential to alter the result of trial." Taggart's Brief at 30-31.

This issue was not raised in Taggart's petition or amendment thereto. Although Taggart noted in his petition that his father, paternal male relatives, Ms. Milbourne, and individuals with matching y-DNA patterns were not tested, he did so as part of his factual introduction regarding the DNA evidence. **See** PCRA Petition, 10/31/19, at ¶¶ 24, 25. In the separate section of his PCRA petition where he asserted specific claims of trial counsel's ineffectiveness, Taggart did not assert any claim that trial counsel was ineffective for failing to request data related to these individuals. **See id**. at ¶¶ 27-45. This issue

was not raised in the amendment to the petition. *See* Amendment to PCRA Petition, 3/20/20, at 1-3. Accordingly, as Taggart's second issue was not raised in the lower court, it is waived. *See* Pa.R.A.P. 903(a) (providing that issues not raised in the lower court are waived and cannot be raised for the first time on appeal).

In Taggart's third issue, he contends that counsel was ineffective for stipulating that the DNA found on the firearm and ammunition was properly secured and handled by police and crime laboratory personnel. Taggart claims that competent counsel would have inquired about potential cross-contamination, whether Taggart's samples were stored with evidentiary samples, and whether the samples could have been cross-contaminated by secondary transfer from Taggart to one of the persons who handled the gun.[5]

_____

[5] Taggart notes that he attached a photograph to the amendment to his petition which showed ammunition scattered on top of a letter addressed to him. Taggart maintains that the photograph "clearly illustrates the potential for [his] DNA on the envelop [sic] to have been transferred to ammunition possibly deposited by one of the other DNA contributors." Taggart's Brief at 32. Taggart asserts that trial counsel made no use of this photograph which, he claims, would have suggested improper handling in such a way as to expose the ammunition to secondary transfer. Importantly, Taggart fails to explain when or where any such photograph was taken and by whom. *See Coulter v. Ramsden*, 94 A.3d 1080, 1088-89 (Pa. Super. 2014) (holding that arguments which are not appropriately developed are waived, and that mere issue spotting without analysis or legal citation to support an assertion precludes our appellate review of a matter); *see also* Pa.R.A.P. 2119 (providing that the argument shall include discussion and citation of authorities as are deemed pertinent). As Taggart failed to properly develop any argument relating to the photograph, we deem it waived. *See Ramsden*, 94 A.3d at 1088-89; Pa.R.A.P. 2119.

The PCRA court considered Taggart's third issue and concluded that it lacked merit. The court reasoned:

> [Taggart] appears to conflate chain of custody with secondary transfer. . . . [T]he stipulation asserted by [Taggart] . . . only covers chain of custody and not secondary transfer of DNA. [Taggart] fails to plead and prove that the DNA evidence was not properly secured or handled correctly by the aforesaid law enforcement offices.
>
> [Taggart] attempts to buttress his boilerplate claim by stating that competent counsel would have inquired into whether the DNA samples could have been contaminated by secondary transfer from [Taggart] to one of the individuals who handled the gun. [Amendment to] PCRA Pet[ition], 3/30/20, at 11. Although we acknowledge that the handling of DNA is critical in any case, there is no evidence in the record that the evidence at issue was not properly secured or handled. [I]t is [Taggart's] burden to prove that the procedures to prevent secondary transfer were not followed in this case. [Taggart's] speculative claim certainly cannot satisfy this burden.

Rule 907 Notice, 3/16/21, n.4 (at 9-10) (unnecessary capitalization omitted).[6]

Here, the stipulation provided that the DNA samples were "properly secured and handled by the Coatesville City Police, Chester County Detectives, and the Pennsylvania State Police Forensic labs." N.T., 11/10/15, at 101. The stipulation did not address cross-contamination or secondary transfer, nor did it limit or preclude trial counsel from cross-examining the Commonwealth's

---

[6] The PCRA court additionally reasoned that the issue was waived because it could find no evidence of the stipulation in the record, and Taggart failed to indicate the place in the record where the stipulation could be found. *See* Rule 907 Notice, 3/16/21, n.4 (at 9). However, we decline to find waiver, as our review discloses that Taggart indicated in his petition the material terms of the stipulation as well as the place in the record where the stipulation could be found. *See* PCRA Petition, 10/31/19, at ¶ 35.

DNA expert regarding the potential for cross-contamination or secondary transfer. Moreover, on cross-examination of the Commonwealth's DNA expert, trial counsel elicited testimony that there is no way to determine when or how the DNA got on the bag of cocaine. **See** N.T., 11/12/15, at 57.

More importantly, Taggart has not met his burden of proving that he suffered prejudice as a result of trial counsel's stipulation. In the instant matter, Taggart offers no evidence that there was any lapse in the securing or handling of the DNA samples by law enforcement. Thus, Taggart cannot demonstrate that there is a reasonable probability that the outcome of the proceedings would have been different but for trial counsel's stipulation. **See** **Johnson**, 139 A.3d at 1272. For these reasons, his third issue merits no relief.

In his fourth issue, Taggart contends that trial counsel was ineffective for failing to object to inaccurate statements made by the prosecutor during opening and closing remarks to the jury and by Detective Shannon Miller regarding the y-DNA evidence pertaining to the firearm. Taggart argues that, although the y-DNA testing of the firearm indicated that there was a mixture of DNA from at least three people and that Taggart was not the primary contributor, the prosecutor nevertheless stated in his opening argument that his forensic scientist would testify that the DNA from the firearm was a partial match to Taggart or his paternal male relatives. Taggart additionally claims that trial counsel was ineffective for failing to object when the prosecutor

elicited testimony from Detective Miller that trial counsel's remark to the jury that "there was no direct connection to the firearm" was incorrect "[b]ecause there's DNA evidence that does not exclude him from touching the firearm." Taggart's Brief at 36-37 (quoting N.T., 11/10/15, at 149). Taggart asserts that trial counsel was also ineffective when she failed to object to testimony that she elicited from Detective Miller on recross-examination that "the DNA evidence doesn't exclude [Taggart] or his male relatives." *Id*. at 37 (quoting N.T., 11/10/15, at 151). Finally, Taggart claims that trial counsel was ineffective for failing to object to the remarks made by the prosecutor during closing arguments that, "with the DNA for the gun. [Taggart] is connected to it. . . . It's in his house with his DNA." *Id*. at 38 (quoting N.T., 11/12/15, at 120-21).

Notably, Taggart challenged the prosecutor's opening and closing remarks regarding the DNA related to the firearm in his direct appeal under the theory of prosecutorial misconduct. Although the trial court deemed the issue waived, this Court nevertheless concluded that even if the issue had been preserved, it lacked merit for the reasons expressed by the trial court:

> Here any perceived error is harmless in light of the overwhelming inculpatory evidence presented at trial and defense counsel's thorough cross-examination of the Commonwealth's DNA expert concerning this evidence. In fact, during cross examination, the DNA expert acknowledged that she was unable to conclusively match [Taggart's] DNA profile with the DNA found on the firearm and magazine. Therefore, any misstatement by the prosecutor concerning this evidence was clearly pointed out to the jury by defense counsel during trial. Moreover, the jury was

- 14 -

instructed during the trial that the opening statements and closing arguments were not evidence.

***Taggart***, 178 A.3d 205 (unpublished memorandum at *25) (quoting Supplemental Pa.R.A.P. 1925(a) Opinion, 1/30/17, at 12 (citations to the record omitted)).

With respect to Taggart's claim that trial counsel was ineffective for failing to object to Detective Miller's testimony, the PCRA court concluded that the claim lacked merit for the following reasons:

> Detective Miller testified as a lay or fact witness. It was stressed repeatedly to the jury by trial counsel that [the detective] was not an expert[] and could not opine as such concerning the DNA evidence. Accordingly, the jury is presumed to have afforded the proper weight to Detective Miller's testimony.
>
> Detective Miller appeared to initially conflate or confuse the DNA evidence found on the firearm by testifying that the DNA obtained from the firearm did not exclude [Taggart] from touching the gun. However, any prejudice from her testimony was later cured during direct examination when the detective stated that [Taggart's] DNA was found on the ammunition, inside the gun and on the top of the baggie containing narcotics. Accordingly, [Taggart's] claim affords him no relief under the PCRA.

Rule 907 Notice, 3/16/21, n.4 (at 12) (unnecessary capitalization and citations to the record omitted).

For the reasons expressed by the trial court and the PCRA court, we conclude that Taggart has failed to establish that he was prejudiced by trial counsel's failure to object to the prosecutor's remarks during opening and closing statements to the jury and to the testimony provided by Detective Miller regarding the DNA from the firearm. The jury received specific

- 15 -

instructions that it was not to consider as evidence the opening and closing arguments made by counsel. *See* N.T., 11/12/15, at 82-83; N.T., 11/10/15, at 15. The jury is presumed to follow instructions from the court. *See Commonwealth v. Simpson*, 66 A.3d 253, 269 (Pa. 2013) (holding that appellate courts presume that that juries follow instructions). Additionally, the prosecutor elicited accurate DNA testimony from Detective Miller that incriminating DNA evidence was found on the ammunition and the bag of cocaine. *See* N.T., 11/10/15, at 100. As we discern no abuse of discretion by the PCRA court in rejecting this ineffectiveness claim, Taggart's fourth issue warrants no relief.

In his fifth issue, Taggart contends that trial counsel was ineffective for repeatedly and emphatically remarking to the jury in her closing arguments that the DNA evidence conclusively "excluded" Taggart from the potential group of individuals who could have committed the crimes. Specifically, Taggart points to trial counsel's statements that "I don't know what the prosecution doesn't get about the fact that my client was excluded from all of the [DNA] evidence. That means that he is not in the subset of people who could have committed this crime, and it conclusively establishes he's not guilty." Taggart's Brief at 41-42 (quoting N.T., 11/12/15, at 94-95). Taggart points out that the DNA results indicated that he and nine other individuals in the DNA database of 25,665 individuals could not be excluded from having touched the ammunition. Taggart argues that because these statements were

not supported by the evidence, trial "counsel's decision to make them in such an emphatic fashion clearly risked destroying the credibility of her presentation as a whole." *Id*. at 42. Taggart asserts, the reasonably expected result of trial counsel's misstatements regarding the DNA evidence would be to lessen her credibility, thereby causing him prejudice.

The PCRA court considered Taggart's fifth issue and determined that it lacked merit. The court reasoned:

> [Taggart's] argument is once again based on pure conjecture. [The] argument would require the court to make an unsubstantiated finding that the jury convicted [him] based on its distrust of trial counsel's credibility. The record is devoid of any evidence that [Taggart] was convicted solely because of trial counsel's lack of credibility. Rather, [Taggart's] argument is belied by the record in that the jury perplexingly acquitted [him] of the PWID charges despite trial counsel conceding that if [Taggart] was guilty of possession of a controlled substance than [*sic*] he was also guilty of the PWID offenses. Accordingly, [Taggart] is unable to establish actual prejudice.
>
> Additionally, we reiterate that the jury had been specifically instructed that opening statements and closing arguments are not to be considered by them as evidence. Here, the jury was specifically instructed on how closing arguments may be considered. The jury is presumed to have followed the court's instructions. Since the jury is the sole finder of facts from the evidence presented at trial and the sole judge of a witness' credibility, [Taggart] cannot identify any cognizable prejudice attributable to trial counsel's remarks so as to be entitled to relief.
>
> Although a perfectly conducted trial is indeed the ideal objective of our judicial process, the defendant is not entitled to relief simply because of some imperfections in the trial, so long as he has been accorded a fair trial. Because the record is devoid of any evidence that trial counsel's closing argument caused the jury to form a fixed hostility or bias toward [Taggart] or prevented the jury from rendering a fair verdict, [this court] is constrained to deny the request for relief.

- 17 -

Rule 907 Notice, 3/16/21, n.4 (at 13-14) (citations, quotation marks, and unnecessary capitalization omitted).

We discern no abuse of discretion by the PCRA court in determining that Taggart failed to establish that trial counsel's remarks caused him any prejudice. As the PCRA court explained, the jury received specific instructions that it was not to consider as evidence the opening and closing arguments made by counsel. *See* N.T., 11/12/15, at 82-83; N.T., 11/10/15, at 15. The jury is presumed to follow instructions from the court. *See Simpson*, 66 A.3d at 269. Moreover, Taggart has presented this Court with no evidence from the record demonstrating that there is a reasonable probability that the outcome of the proceedings would have been different but for trial counsel's remarks. *See Johnson*, 139 A.3d at 1272. Such a showing is necessary particularly where, as here, this Court previously noted that the inculpatory evidence of Taggart's guilt was overwhelming. *See Taggart*, 178 A.3d 205 (unpublished memorandum at *25) (quoting Supplemental Pa.R.A.P. 1925(a) Opinion, 1/30/17, at 12). Thus, Taggart's fifth issue merits no relief.

In his sixth issue, Taggart contends that trial counsel was ineffective for presenting evidence related to Taggart's maternally related male relatives rather than to his paternally related male relatives. Taggart points out that the y-DNA testing indicated that Taggart and his paternally related male relatives could not be excluded from the pool of individuals whose DNA was found on the ammunition and the bag of cocaine. Taggart asserts that trial

counsel presented the testimony of Taggart's cousin, Kyhil Gregory Raison ("Raison") concerning the number and names of his paternally related male relatives. Taggart argues that trial counsel was ineffective in presenting Raison's testimony because Raison is maternally related to Taggart rather than paternally related. Taggart maintains that trial counsel's presentation of Raison's irrelevant testimony undermined the credibility of the defense.

The PCRA court determined that Taggart essentially contends that trial counsel called the wrong witness at trial. *See* Rule 907 Notice, 3/16/21, n.4 (at 14). The PRA court explained that, when raising a claim of ineffectiveness for the failure to call a potential witness, a PCRA petitioner must establish that: (1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew of, or should have known of, the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the testimony of the witness was so prejudicial as to have denied the defendant a fair trial. *See id*. (citing *Commonwealth v. Johnson*, 966 A.2d 523, 536 (Pa. 2009)). The PCRA court concluded that Taggart's sixth issue lacked merit because he failed to identify which witness should have been called, that trial counsel knew of the existence of the uncalled witness,

and that the uncalled witness was available to testify on Taggart's behalf. *See id*.[7]

Here, Taggart has not identified any particular witness that trial counsel should have called, nor has Taggart even acknowledged the remaining requirements to establish a claim of ineffectiveness for the failure to call a potential witness. *See Johnson*, 966 A.2d at 536; *see also* 42 Pa.C.S.A. § 9545(d)(1). Thus, Taggart's claim that trial counsel was ineffective for calling the wrong witness entitles him to no relief.

To the extent that Taggart faults trial counsel for presenting irrelevant testimony, his claim has arguable merit. Although the record indicates that Taggart is, in fact, paternally related to Raison, they do not share the same y chromosome. Raison testified that he and Taggart are cousins and that "[m]y mother and [Taggart's] father are brother[] and sister[]." N.T., 11/12/15, at 74. Thus, Raison is Taggart's paternally related male relative. Nevertheless, not all paternally related male relatives share the same y chromosome. Although the Commonwealth's DNA expert repeatedly used the term "paternally related male relatives," her testimony was clear that the y chromosome can only be handed down from father to son, thereby narrowing

---

[7] The PCRA court additionally concluded that Taggart failed to include in his PCRA petition a signed certification regarding the proposed uncalled witness stating the witness's name, address, date of birth and substance of testimony, as required by 42 Pa.C.S.A. § 9545(d)(1). *See* Rule 907 Notice, 3/16/21, n.4 (at 14).

the scope of paternally related male relatives who carry the same y chromosome. *See* N.T., 11/12/15, at 45-46. Based on the explanation provided by Ms. Crouch, Raison's y chromosome would have come from his own father and would differ entirely from the y chromosome shared by Taggart and his father. Accordingly, Raison's testimony regarding his paternally related male relatives was irrelevant, since those relatives would have different y chromosomes than Taggart. *See id*.

Nevertheless, Taggart has not demonstrated that he was prejudiced by counsel's decision to call Raison as a witness. As explained above, to establish prejudice, a PCRA petitioner must demonstrate that there is a reasonable probability that the outcome of the proceedings would have been different but for counsel's action or inaction. *See Johnson*, 139 A.3d at 1272. Taggart has not demonstrated that, but for trial counsel's decision to call Raison, there is a reasonable probability that the outcome of the proceedings would have been different. Therefore, his sixth issue entitles him to no relief.

In his seventh issue, Taggart contends that if any of his individual claims of ineffectiveness fail for lack of prejudice, then the cumulative effect of his various claims of ineffectiveness should satisfy the prejudice prong. Our Supreme Court has explained:

> We have often held that no number of failed [ ] claims may collectively warrant relief if they fail to do so individually. However, we have clarified that this principle applies to claims that fail because of lack of merit or arguable merit. When the failure of individual claims is grounded in lack of prejudice, then the

cumulative prejudice from those individual claims may properly be assessed.

***Commonwealth v. Spotz***, 84 A.3d 294, 2321 n.22 (Pa. 2014) (internal quotation marks and citations omitted). The Court went on to add that no cumulative prejudice will be found when the "ineffectiveness claims at issue are independent factually and legally, with no reasonable and logical connection warranting a conclusion that the cumulative effect was of such moment as to establish actual prejudice." ***Id***.

Here, although Taggart raised six ineffectiveness claims, the only claims which failed solely because he did not establish the prejudice prong of the ineffectiveness test were the following: (1) trial counsel's failure to object to the prosecutor's opening statement and closing remarks to the jury and Detective Miller's comments regarding the DNA evidence; (2) trial counsel's repeatedly and emphatically remarking to the jury in her closing arguments that the DNA evidence conclusively "excluded" Taggart from the potential group of individuals who could have committed the crimes; and (3) trial counsel's presentation of Raison's irrelevant testimony regarding his paternally related male relatives. In our view, the DNA evidence presented at trial was somewhat complicated and, at times, confusing. Nevertheless, the jury was specifically instructed that it could not consider counsel's remarks as evidence, and the jury was presented with accurate testimony from Ms. Crouch and ultimately Detective Miller regarding the DNA evidence. Given these considerations, as well as the overwhelming inculpatory evidence of

Taggart's guilt presented at trial, we conclude that the cumulative effect of these misstatements was not of such moment as to establish actual prejudice. *Id*. Accordingly, Taggart's seventh issue merits no relief.

In his eighth issue, Taggart challenges the PCRA court's denial of his second request for discovery from the Pennsylvania State Police, Bureau of Forensic Services. In non-capital PCRA cases, no discovery is permitted at any stage of the proceedings except upon leave of court and after a showing of exceptional circumstances. *See* Pa.R.Crim.P. 902(E)(1). The PCRA and the applicable rules do not define "exceptional circumstances" that would support discovery on collateral review. *Commonwealth v. Frey*, 41 A.3d 605, 611 (Pa. Super. 2012). Rather, it is for the PCRA court, in its discretion, to determine whether a case is exceptional and discovery is warranted. *Id*. Discovery in a PCRA proceeding cannot be used as a "fishing expedition." *Commonwealth v. Lark*, 746 A.2d 585, 591 (Pa. 2000), *overruled on other grounds by Commonwealth v. Small*, 238 A.3d 1267, 1285-86 (Pa. 2020). A petitioner's "mere speculation" that exculpatory evidence may exist does not establish that exceptional circumstances exist. *Commonwealth v. Dickerson*, 900 A.2d 407, 412 (Pa. Super. 2006). We will not disturb a PCRA court's determination regarding the existence or absence of exceptional circumstances unless the court abused its discretion. *See Frey*, 41 A.3d at 611. An abuse of discretion is not a mere error in judgment; rather, it is a decision based on bias, ill will, partiality, prejudice, manifest

unreasonableness, or misapplication of law. *Id*. An appellant has the duty to convince this Court that such an abuse occurred. *Id*.

Taggart claims that the information he sought to request from the Pennsylvania State Police, Bureau of Forensic Services was critical to right to effective assistance of counsel in a first PCRA petition. Taggart argues that Dr. Kessis indicated that, in order to adequately evaluate the Commonwealth's DNA evidence, he needed supporting documentation for the DNA analysis, such as bench notes, worksheets, chromatographical data, data files, protocols and procedures in use by the laboratory involved, conditions of storage of the samples, and chain of custody. Taggart claims that he therefore filed a motion for discovery of items in the district attorney's possession which the PCRA court granted. Taggart explains that, in response, the prosecutor indicated the majority of the items that Taggart requested were not in the district attorney's possession. Taggart asserts that he then filed an amended motion for discovery directed to the Pennsylvania State Police, Bureau of Forensic Services, requesting the same information. Taggart argues that it was unreasonable for the PCRA court to grant the motion for discovery when directed to the district attorney but to deny the very same motion when the discovery was directed to the Pennsylvania State Police, Bureau of Forensic Services. Taggart claims that exceptional circumstances are presented in this case given his inability to demonstrate what the probable outcome would have been had counsel obtained a DNA expert for the defense. Taggart asserts that

this is particularly true because this is his first PCRA and his lack of access to discovery has frustrated the ability of Taggart's PCRA counsel to undertake a thorough first PCRA review.

The PCRA court considered Taggart's eighth issue and concluded that it lacked merit. The court reasoned:

> Here, the court liberally granted [Taggart's] initial request for post-conviction discovery to afford [him] ample opportunity to develop his claim. After the Commonwealth provided the initial discovery, [Taggart] attempted to seek additional discovery, which again was not legally required under the PCRA. Specifically, [Taggart] requested "discovery of the underlying data and State Police bench notes and other similar material necessary for the desired expert review of the Commonwealth's DNA analysis." [Amendment to] PCRA Pet[ition], 3/30/20, at 1. The additional discovery request amounts to an impermissible "fishing expedition" as [Taggart] was unable to articulate any legal basis for his second request for discovery. Rather, [Taggart] appears to have requested this material in hope that it would provide some new evidence that would be favorable to his case.
>
> Rather, than satisfying his burden entitling him to the requested discovery, [Taggart] appears to blame the court for his inability to make out valid PCRA claims. . . ..
>
> * * * *
>
> Because [Taggart's] overly broad requests failed to establish that the requested material exists . . ., the court properly concluded that [Taggart] failed to establish an "exceptional circumstance" exists. Logic dictates that if [Taggart] is unsure whether the requested materials exist or what their contents may show, [he] cannot claim that [this] court failed to permit exculpatory discovery.

Rule 907 Notice, 3/16/21, n.4 (at 15-16) (unnecessary capitalization omitted).

Here, Taggart has not demonstrated any exceptional circumstances which would support an exception to the general rule that discovery is not

permitted in non-capital PCRA proceedings. The mere fact that Taggart hoped that the requested items might exist and further hoped that, if such materials did exist, that they might provide a basis to question the Commonwealth's DNA evidence is simply insufficient to meet the requisite threshold. *See Dickerson*, 900 A.2d at 412 (holding that petitioner's "mere speculation" that exculpatory evidence may exist does not establish that exceptional circumstances exist). Accordingly, as we discern no abuse of discretion by the PCRA court in denying Taggart's second motion for discovery, his eighth issue merits no relief.

Having found no merit to Taggart's issues, we affirm the PCRA court's order dismissing his petition.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/28/2022