J-S27040-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| SHANNON ROBERT WATTS | : | |
| | : | |
| Appellant | : | No. 1723 MDA 2022 |

Appeal from the PCRA Order Entered November 22, 2022
In the Court of Common Pleas of Franklin County
Criminal Division at No(s): CP-28-CR-0001071-2017

BEFORE: BENDER, P.J.E., BOWES, J., and SULLIVAN, J.

MEMORANDUM BY SULLIVAN, J.:                **FILED: JANUARY 24, 2024**

Shannon Robert Watts ("Watts") appeals from the dismissal, following a hearing, of his first petition filed under the Post Conviction Relief Act ("PCRA").[1]  We affirm.

In a prior decision, we detailed the underlying facts:

On October 24, 2016, Alllen Chapman [("the victim")] invited his friend, Forrest Miller [("Miller")], and Miller's family over to his apartment, where he lived with his wife and daughter.  While there, [the victim] drank alcohol and Miller smoked marijuana.

   Later, [the victim] and Miller went to Watts'[s] house to buy prescription narcotics.  After each bought 4 pills from Watts, Miller crushed 2 and snorted them.  [The victim] did the same with all 4 pills he purchased from Watts.  After leaving Watts'[s] house, [the victim] and Miller briefly stopped at a bar and then a store to buy beer and cigarettes.

---

[1] ***See*** 42 Pa.C.S.A. §§ 9541-9546.

[The victim] and Miller later returned to the apartment. [The victim] was irritated, acted a bit crazy, and argued with his wife. He appeared high and spacey, had trouble talking, stumbled around, and needed help with eating. Shortly after Miller and his family left, [the victim] fell asleep on the sofa.

The next morning, [the victim's] wife found him still asleep on the sofa, snoring. She shook his shoulder to try to wake him, and his head [slipped] off the arm of the sofa. [The victim] then went silent and stopped breathing.

When the paramedics arrived, [the victim] was not breathing and had no pulse. The paramedics used a defibrillator and started CPR on [the victim]. On the way to the hospital, the paramedics continued to try to resuscitate [the victim] but could not keep his heart beating. The paramedics pronounced [the victim] dead.

The next day, the police interviewed Miller about what occurred the night before. Miller and his girlfriend had consumed the other 2 pills he got from Watts. The police set up a controlled buy using Miller as a confidential informant to buy drugs from Watts.

Miller met Watts and bought 3 oxymorphone pills from him. As a result, the police arrested Watts and interviewed him about [the victim]. Watts admitted that he sold pills to Miller . . . and watched Miller and [the victim] snort them. Watts was charged with [the victim's] death.

Following trial, a jury convicted Watts of [drug delivery resulting in death "DDRD"] and other related offenses [filed under a separate docket number but consolidated for trial]. The trial court sentenced Watts to 78 months to 240 months of incarceration. Watts filed a post-sentence motion, which the trial court denied. No appeal was filed.

After an amended PCRA petition, the court reinstated Watts' direct appellate rights. Watts filed [a] timely appeal.

***Commonwealth v. Watts***, 1468 MDA 2020 (Pa. Super. 2021) (unpublished

memorandum at 1-3).

This Court affirmed the judgment of sentence. *See id*. at 1. Watts did not seek leave to appeal to the Pennsylvania Supreme Court.

Watts, through retained counsel, filed the instant, timely PCRA petition, which included a request for discovery. *See* PCRA Petition, 4/28/22, at 4 (unnumbered). The PCRA petition included the dockets numbers in both cases. *See id*. at 1 (unnumbered). Subsequently, Watts filed, without seeking leave of court, two "addendums" to his PCRA petition. The first, filed prior to the evidentiary hearing the PCRA court granted, sought reconsideration of the PCRA court's decision denying discovery. *See* Addendum to PCRA Petition, 9/7/22, at 1-2 (unnumbered). The second, filed after the evidentiary hearing, sought to supplement the PCRA petition by adding a new claim of ineffective assistance of trial counsel. *See* Second Addendum to PCRA Petition, 10/14/22, at 1-3 (unnumbered).

The PCRA court held an evidentiary hearing at which Watts, Attorney Eric J. Weisbrod ("trial counsel"), and Dr. Michael Baden ("Dr. Baden"), an expert in forensic pathology, testified. The PCRA court denied the petition. *See* Order, 11/22/22 at 1 (unnumbered). The instant, timely appeal followed. Watts and the trial court complied with Pa.R.A.P. 1925.[2] *See* Notice of Appeal, 12/22/22, at 1 (unnumbered). Watts raises four issues on appeal.

---

[2] Watts filed a single notice of appeal with only one docket number, thereby failing to conform with ***Commonwealth v. Walker***, 185 A.3d 969 (Pa. 2018), which requires separate notices of appeal for each case. ***Id***. at 976-77.
*(Footnote Continued Next Page)*

1. Did the [PCRA] court err in denying [Watts's PCRA petition] . . . where [Watts's] trial counsel was ineffective for failing to consult with and procure an expert in pathology to aid the defense and, as a result, rendered himself unable to convey expert information to the jury — of crucial importance to the defense in relation to causation . . . [?]

2. Did the [PCRA] court err in denying [Watts's PCRA petition], in conjunction with its denial of [Watts's] request to engage in discovery, as set forth in [the PCRA petition]?

3. Did the [PCRA] court err in denying [Watts's PCRA petition], in conjunction with its refusal to consider [Watts's] second request to engage in discovery as set forth in [Watts's] addendum to [PCRA petition] in which [Watts] request[ed] that the [PCRA c]ourt reconsider its denial of his request to engage in discovery?

4. Did the [PCRA] court err by refusing to consider [Watts's] alternative claim for [PCRA] relief set forth in [Watts's] Second Addendum to [PCRA petition], where it became evident based upon testimony provided at the hearing held on September 30, 2022, that trial counsel provided ineffective assistance of counsel in failing to object to damaging statements contained in the prosecutor's closing arguments that were utterly unsupported by evidence submitted at trial[?]

Watts's Brief at 9-10 (some dates and transcript cites omitted).

---

However, *Walker* has been overruled in part by *Commonwealth v. Young*, 265 A.3d 462, 477 (Pa. 2021), and, further, in May 2023, Pa.R.A.P. 311, 313, 314, 341, 512, 902, and 904 were amended with immediate effect in response to *Walker*, *Young*, and their progeny. Regardless of the effect of the *Walker* violation here, we decline to quash Watts's appeal because the PCRA court order dismissing Watts's petition informed Watts he had the right to appeal the judgment within 30 days of the order, but not that he needed to file a separate appeal for each docket number. *See* Order, 11/22/22. We view this as a breakdown in court operations pursuant to *Commonwealth v. Larkin*, 235 A.3d 350, 354 (Pa. Super. 2020) (*en banc*), and *Commonwealth v. Stansbury*, 219 A.3d 157, 159 (Pa. Super. 2019), precluding waiver.

In his first claim, Watts asserts he received ineffective assistance of trial counsel. *See* Watts's Brief at 19-35. We review ineffectiveness claims under the following standard:

Appellate review of a PCRA court's dismissal of a PCRA petition is limited to the examination of whether the PCRA court's determination is supported by the record and free of legal error. The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record. This Court grants great deference to the findings of the PCRA court, and we will not disturb those findings merely because the record could support a contrary holding. In contrast, we review the PCRA court's legal conclusions *de novo*.

*Commonwealth v. Maxwell*, 232 A.3d 739, 744 (Pa. Super. 2020) (*en banc*) (internal citations and quotation marks omitted). Further, a "PCRA court's credibility findings are to be accorded great deference, and where supported by the record, such determinations are binding on a reviewing court." *Commonwealth v. Williams*, 141 A.3d 440, 452 (Pa. 2016) (internal citations omitted).

With respect to claims in ineffective assistance of counsel,

counsel is presumed to have been effective and [] the petitioner bears the burden of proving counsel's alleged ineffectiveness. To overcome this presumption, a petitioner must establish that: (1) the underlying substantive claim has arguable merit; (2) counsel did not have a reasonable basis for his or her act or omission; and (3) the petitioner suffered prejudice as a result of counsel's deficient performance, that is, a reasonable probability that but for counsel's act or omission, the outcome of the proceeding would have been different. A PCRA petitioner must address each of these prongs on appeal. A petitioner's failure to satisfy any prong of this test is fatal to the claim.

*Commonwealth v. Wholaver*, 177 A.3d 136, 144 (Pa. 2018) (internal citations omitted). "Counsel cannot be found ineffective for failing to pursue a baseless or meritless claim." *Commonwealth v. Taylor*, 933 A.2d 1035, 1042 (Pa. Super. 2007) (citation omitted).

"To establish ineffective assistance of counsel for the failure to present an expert witness, [an] appellant must present facts establishing that counsel knew or should have known of the particular witness." *Commonwealth v. Millward*, 830 A.2d 991, 994 (Pa. Super. 2003) (citation omitted). Further, "the [appellant] must articulate what evidence was available and identify the witness who was willing to offer such evidence." *Commonwealth v. Bryant*, 855 A.2d 726, 745 (Pa. 2004) (citations omitted).

Watts claims trial counsel was ineffective for failing to retain an expert pathologist to counter the testimony of the Commonwealth's expert pathologist concerning the victim's cause of death. *See* Watts's Brief at 19-35. As noted above, Watts *did* present the testimony of Dr. Baden, an expert pathologist, at the evidentiary hearing. *See* Watts's Brief at 21. Watts highlights various parts of Dr. Baden's testimony which he believes either supported testimony from fact witnesses and contradicted the Commonwealth's medical evidence, demonstrated a lack of thoroughness in the Commonwealth's expert pathologist's investigation, or cast doubt on that expert's scientific findings. Lastly, Watts argues trial counsel, who consulted

with an expert ***toxicologist*** prior to trial,[3] had no reasonable basis for failing to consult an expert ***pathologist***. ***See id***. at 27-31.

The PCRA court disagreed with Watts, finding trial counsel articulated a reasonable basis for not retaining an expert pathologist, and Watts had not shown prejudice. PCRA Court Opinion, 11/22/22, at 8-10. The PCRA court stated:

> Trial counsel testified that when he examined the Commonwealth's expert report, he noted the expert identified the obvious, serious, and unrelated to drug-use, medical problems of the victim. He further noted the Commonwealth's expert could not "parse out" the drugs from causation, *i.e.*, the Commonwealth's expert could not say the drugs alone caused the victim's death; trial counsel further knew the Commonwealth's cooperating witness/informant had been purchasing similar drugs from [Watts]. In short, trial counsel identified significant weaknesses in the Commonwealth's own expert evidence that he could exploit during trial. His strategy, which is tried and true in criminal defense and eminently reasonable, was to form the defense from within the Commonwealth's own evidence. Such strategy under these circumstances [was] reasonable and designed to effectuate [Watts's] interests.
>
> It is without import that trial counsel acknowledged having his own forensic pathologist to consult with and/or testify would have been helpful. It is not the focus of the [c]ourt to examine whether that would have been "better" than the path chosen. We must determine whether trial counsel chose a reasonable path; it is irrelevant whether there was a "better" path unless it was ***substantially*** better. We find it is not.

***Id***. (emphasis in original; internal citation omitted).

---

[3] ***See*** N.T., 9/30/22, at 51.

Regarding the proof of prejudice, the PCRA court provided the following discussion:

[Watts's] proposed expert, Dr. Baden, did not testify that he held an opinion favorable to Watts that he could have rendered for the jury. . . . In fact, he testified the Commonwealth's expert's finding of the cause of death was extremely accurate. He quibbled more with whether the Commonwealth's expert had fully investigated everything he could, *i.e.*, obtained a complete medical history for the victim, spoken with next of kin, *etc*. This is woefully short of proving the "path not taken" offered a substantial probability of success.

\* \* \*

Not only did [Watts's] expert witness, Dr. Baden, not offer an opinion in [Watts's] favor, he did not testify to any opinion as to the victim's cause of death (other than to agree with the Commonwealth's expert, based upon what he had reviewed). The bulk of his testimony was focused on what evidence he would want to examine yet and lines of questioning that could have been put to the Commonwealth's expert during trial. None of this testimony establishes a reasonable probability that, but for the trial counsel's failure to retain an expert pathologist, the outcome of the trial would have been different. In fact, on the testimony presented, it is every bit as probable [Watts's] expert would continue to agree with the Commonwealth's expert as it is he would render a differing opinion (even presuming he was able to review all the evidence/reports/records/interview next of kin that he wants).

*Id*. (emphasis in original; internal citation omitted).

Our independent review of the relevant law and the certified record confirms the PCRA court's analysis. Dr. Baden's testimony, during which he continually equivocated and "walked back" his disagreements with the

Commonwealth's expert, was arguably more harmful to Watts than helpful.[4]

*See* N.T., 9/30/22, at 5-44. Critically, Dr. Baden testified he could not rule out opioid overdose as being "a direct and substantial factor" in causing the victim's death. *Id*. at 45.

On direct appeal, this Court rejected Watt's sufficiency challenge to his DDRD conviction. *See Watts*, *supra*, at 4-8. We concluded Watts sold the drug that was present in [the victim's] blood and watched him snort it. The Commonwealth's expert pathologist opined that crushing and snorting the pills he got from Watts, was in part the cause of [the victim's] death. *See id*. at 8. Watts has not presented any expert testimony which contradicted the

_____

[4] Watts views Dr. Baden's testimony in the light most favorable to him and ignores that Dr. Baden qualified most of the testimony Watts emphasizes. Watts notes Dr. Baden discussed the testimony of witnesses that the victim seemed drunk rather than high in the hours immediately prior to his death. However, the toxicology report did not show alcohol in the victim's blood. *See* Watts's Brief, at 21-22; N.T., 9/30/22, at 31. Additionally, Watts ignores Dr. Baden's own testimony that family and spouses of drug addicts are often not reliable witnesses. *See* N.T., 9/30/22, at 30. Watts also strongly relies on Dr. Baden's theory regarding post-mortem "redistribution," which would result in blood taken from the victim's heart having artificially high levels of opioids, and Dr. Baden's criticism of the Commonwealth's expert for not using blood taken from other parts of the body. *See* Watts's Brief at 23-24; N.T., 9/30/22, at 16-17. Dr. Baden admitted his testimony was speculative because he did not know if the tested blood came from the victim's heart. *See* N.T., 9/30/22, at 18. Watts also contends Dr. Baden would have testified the levels of opioids in the victim's blood were non-lethal at the time of his death. *See* Watts's Brief at 24-25. However, this misstates Dr. Baden's testimony. Dr. Baden testified that different people have different tolerances for opioids and the levels of opioids found in the victim's blood have been found to be non-lethal in some people and lethal in other people, and Dr. Baden *could not know* if the levels were lethal for the victim. *See* N.T., 9/30/22, at 20-21, 31-37.

Commonwealth's expert testimony. *See* N.T., 9/30/22, at 5-44. As noted above, Dr. Baden agreed with the Commonwealth's expert's conclusion on cause of death. *See id*. at 45. Thus, Watts has not shown that, had trial counsel hired an expert pathologist, the result would have been different. *See Wholaver*, 177 A.3d at 144. For the above reasons, Watts's claim of ineffective assistance of trial counsel does not merit relief.

In his second and third issues, Watts avers the PCRA court erred in denying his request for discovery. *See* Watts's Brief, at 35-38. In his first request, Watts sought:

    a.  The ambulance report(s):
    b. The Emergency Room/Hospital Report(s):
    c. The microscopic slides associated with the autopsy;
    d. The full toxicology lab report(s); and
    e. Any other documents/materials that Dr. Baden deems relevant
       to his review.

PCRA Petition, 4/28/22, at 5 (unnumbered). In his second request, Watts asked for the same items, but elaborated his "requests are made under exceptional circumstances" and "[i]t is highly likely that the requested items will support [Watts's] pending claim of ineffective assistance of counsel." Addendum to [PCRA petition], 9/7/22, at 1-2 (unnumbered). He further averred, "[i]t is highly likely that the requested items will result in [Watts's]

- 10 -

receipt of exculpatory evidence that was not available to [Watts] at the time of trial due to ineffective assistance of trial counsel."[5] *Id*.

The Pennsylvania Rules of Criminal Procedure proscribe discovery during collateral proceedings "except upon leave of court after a showing of exceptional circumstances." Pa.R.Crim.P. 902(E)(1). Neither the PCRA nor the Pennsylvania Rules of Criminal Procedure define "exceptional circumstances," but this Court has held it is within the PCRA court's discretion to determine "whether a case is exceptional and warrants discovery." *Commonwealth v. Watley*, 153 A.3d 1034, 1048 (Pa. Super. 2016) (citation omitted). This Court "will not disturb the PCRA court's determination regarding the existence of exceptional circumstances unless the court abused its discretion." *Id*. (citation omitted). We have stated, "[m]ere speculation that exculpatory evidence might exist does not constitute an exceptional circumstance warranting discovery." *Commonwealth v. Frey*, 41 A.3d 605, 612 (Pa. Super. 2012); *see also Commonwealth v. Hanible*, 30 A.3d 426, 452 (Pa. 2011) (holding showing of good cause under Rule 902(E) "requires more than just a generic demand for potentially exculpatory evidence.").

Watts has not demonstrated the PCRA court abused its discretion. In its decision denying Watts's PCRA petition, the PCRA court noted Watts "did

---

[5] Watts does not claim trial counsel was ineffective for failing to obtain discovery.

- 11 -

not set forth in the [PCRA petition] the reason he desired discovery of these items." PCRA Court Opinion, 11/22/22 at 6. The court further explained:

> During his testimony at the PCRA hearing, Dr. Baden advised that he desired to review these materials. However[,] his testimony was less than clear as to why he desired to review them.
>
> * * *
>
> [Watts] has yet to explain to the [c]ourt his need for this evidence. Dr. Baden's testimony on this point, at best, is that his ability to review the evidence *may* result in exculpatory evidence or an exculpatory opinion on behalf of [Watts]. Clearly, the medical records related to the victim's death have been available, and were available, to [Watts] for several years prior to trial.

*Id*. at 6-7 (emphasis in original, record citations omitted).

Having reviewed the record, in particular the relevant portion of Dr. Baden's testimony, *see* N.T., 9/30/22, at 41-45, we discern no abuse of discretion in the PCRA court's ruling. *See Frey*, 41 A.3d at 611. Moreover, on appeal, Watts does not allege these materials were exculpatory but merely they would "assist [Dr. Baden in] his investigation." Watts's Brief at 37. Watts has presented a "generic demand for potentially exculpatory evidence" and is therefore not entitled to relief. *Hanible*, 30 A.3d at 452. Watts's second and third issues fail.

In his fourth and final issue, Watts contends the PCRA court erred in failing to grant relief on his alternate claim trial counsel was ineffective for failing to object to the Commonwealth's closing argument. *See* Watts's Brief at 38-41. Watts acknowledges he did not raise this claim in his initial PCRA petition. *See id*. at 40. Rather, Watts raised the claim for the first time

following the evidentiary hearing in his second addendum to the PCRA petition, which was filed without leave of court. **See** Second Addendum to [PCRA petition], 10/14/22, at 1-3 (unnumbered); **see also** Pa.R.Crim.P. 905(A) ("The judge may grant leave to amend or withdraw a petition for post-conviction collateral relief at any time."). The PCRA court declined to consider this issue because Watts did not seek leave of court to file an amended PCRA petition. **See** PCRA Court Opinion, 11/22/22, at 6.

A PCRA petitioner **must** seek leave of court to amend a PCRA petition; claims raised in an unauthorized amended petition are waived. **See Commonwealth v. Mason**, 130 A.3d 601, 627 (Pa. 2015) (emphasis added); **see also** Pa.R.Crim.P. 905(A). Our Supreme Court has instructed that PCRA amendments are not "self-authorizing, *i.e.*, [] a petitioner may [not] simply 'amend' a pending petition with a supplemental pleading." **Commonwealth v. Porter**, 35 A.3d 4, 12 (Pa. 2012); **see also Commonwealth v. Rigg**, 84 A.3d 1080, 1085 (Pa. Super. 2014) ("Where the petitioner does not seek leave to amend his petition . . . the PCRA court is under no obligation to address new issues.").

Here, Watts did not seek leave to amend his PCRA petition. Instead, he filed an "addendum" which raised, for the first time, a separate and distinct claim of trial counsel's ineffectiveness. Thus, we conclude Watts waived this claim, and, like the PCRA court, decline to further address it.

For the above reasons, Watts's claims are waived and/or meritless. Therefore, we affirm the PCRA court's dismissal of Watts's PCRA petition.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 1/24/2024