J-S15045-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| RICHARD ANDRE KENNEDY | : | |
| | : | |
| Appellant | : | No. 1499 WDA 2024 |

Appeal from the PCRA Order Entered November 12, 2024
In the Court of Common Pleas of Venango County Criminal Division at
No(s): CP-61-CR-0000725-2017

BEFORE: OLSON, J., SULLIVAN, J., and FORD ELLIOTT, P.J.E.[*]

MEMORANDUM BY FORD ELLIOTT, P.J.E.:        **FILED: August 13, 2025**

Appellant, Richard Andre Kennedy, appeals from the order denying his first petition filed pursuant to the Post Conviction Relief Act, 42 Pa.C.S. § 9541, *et seq*. ("PCRA"), collaterally challenging his jury convictions for murder of the first degree, murder of the second degree, aggravated assault, kidnapping, possessing an instrument of crime, possessing a prohibited offensive weapon, abuse of corpse and tampering with physical evidence.[1] In his petition, Appellant raised a claim that trial counsel was ineffective for failing to have Appellant's hair sample tested in support of a voluntary intoxication defense. After an evidentiary hearing, the PCRA court denied relief. In addition,

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 2502(a), 2502(b), 2702(a)(1), 2901(a)(2), 907(a), 908(a), 5510, and 4910(1), respectively.

Appellant repeatedly sought funds from the PCRA court to hire an expert to test the same hair sample, which requests were denied. Appellant raises both the ineffective assistance issue and the PCRA court error claim in this appeal. We affirm.

On the direct review, this Court summarized the facts of record thusly:

On October 27, 2017, police were called to a residence on New Street in Venango County. The residents of the home found blood and physical damage inside the house and were concerned that a woman named Tausha Baker was potentially missing. Police uncovered blood spatter, bloody clothing, and Baker's tooth in the first floor of the residence and a damaged frying pan from the yard. That same day, officers responded to a call that there was a brush fire at a wooded garbage dump site on Waterworks Road in Venango County, several miles from the residence on New Street. Police recovered Baker's severely burned body at that site. An autopsy later revealed Baker sustained blunt force trauma to her head and was stabbed multiple times in the head, neck, and torso. While police were investigating at the New Street residence, Appellant and Amanda Cypher, Appellant's girlfriend and the co-defendant in this matter, arrived near the location together. Cypher was apprehended and Appellant ran.

Cypher gave several audio[-] and video[-]recorded statements to police about the incident and ultimately testified against Appellant at a 13-day trial in April 2019. Cypher testified that Appellant hit Baker five times in the head with a frying pan in the kitchen of the New Street residence and then got on top of her and hit her in the face multiple times with his fists. Appellant then bound Baker's arms and legs with duct tape. Appellant carried Baker out of the house, got in the backseat of a maroon SUV with Baker, and told Cypher to drive toward the woods. Appellant additionally bound Baker's hands with a white phone charger cord that was inside the vehicle. Appellant told Cypher to stop the vehicle on Waterworks Road. Appellant stabbed Baker with a knife multiple times in the right shoulder area. Appellant also cut his hand. Appellant placed Baker on the ground and hit her in the head twice with a large rock. Cypher complied with Appellant's command to cut the hand bindings and remove Baker's bloody clothing. Appellant rolled Baker's body over a hill. Appellant directed Cypher to drive away

but ordered her to stop so he could throw the rock, knife, and Baker's cellular telephone off the side of the road. Appellant and Cypher took off articles of their clothing and Appellant hid them on a hillside along with Baker's clothes and a bloody blanket. Appellant took a can of gasoline sitting outside a nearby house. Cypher drove Appellant back to Waterworks Road where he set Baker's body on fire. Appellant and Cypher went to several locations afterwards to clean away blood. Eventually, Cypher drove Appellant back to Waterworks Road where he set Baker's body on fire again. Appellant told Cypher, "No face, no case." [N.T. Trial, 4/10/19, 145.] While Cypher testified that she smoked crack-cocaine with Appellant preceding the incidents at issue and had been with Appellant while he was intoxicated "quite a few" times before, she claimed he was not acting unusually and did not have trouble communicating before, during, or after the crimes.

Several eyewitnesses corroborated Cypher's timeline of events. One of the residents of the house on New Street saw Cypher drive away in a maroon SUV. A married couple passed a maroon SUV parked on Waterworks Road and saw a man and woman matching descriptions of Appellant and Cypher standing nearby. Police recovered bloody clothing and a blanket from a "hollowed out tree trunk near 15th and Otter Streets." Police also recovered a severed white cellular phone charger cord. Pursuant to a search warrant, police recovered a gasoline can with blood on the handle from the maroon SUV. Subsequent testing revealed that Appellant's DNA was found on the gasoline can. Blood swabs taken from the house on New Street and from inside the maroon SUV showed the presence of the victim's DNA. Upon his arrest, police took fingernail clippings from Appellant and the victim's DNA was later detected under the fingernails of Appellant's right hand. The jury also viewed surveillance recordings police recovered from a residence on Waterworks Road, a daycare near the New Street residence, a gas station, and the security camera from City Hall which showed images of the maroon SUV.

On April 17, 2019, a jury convicted Appellant of the aforementioned crimes. On August 22, 2019, the trial court sentenced Appellant to two concurrent sentences of life imprisonment for the first-degree and second-degree murder convictions. Consecutive to the concurrent terms of life imprisonment, the trial court imposed an aggregate sentence of 71 to 168 years of imprisonment for the remaining crimes.

*Commonwealth v. Kennedy*, 272 A.3d 497, *1-*2 (Pa. Super., filed Jan. 25, 2022) (memorandum decision) (1451 WDA 2019) (footnotes and internal record citations omitted), *appeal denied*, 286 A.3d 218 (Pa., filed Oct. 13, 2022) (table) (54 WAL 2022).

On direct appeal, Appellant asserted trial court error in prohibiting "testimony by [his expert,] Dr. Lawrence Guzzardi regarding how intoxication/drug use would have affected [Appellant's] ability to form intent to commit murder, as circumstantial evidence was presented at trial from various witnesses regarding [Appellant's] possible use of drugs and alcohol." *Id.* at *5. To support the expert opinion on Appellant's ability to form a specific intent to kill, Appellant relied on circumstantial evidence of his drug and alcohol use. Specifically:

> the owner of the house in which [Appellant] and victim were present [testified] that there was a burned piece of tin foil, which would have indicated drug use[;] another witness stated that he saw drugs in front of [co-defendant] Cypher and[;] there was testimony that [co-defendant] Cypher and [Appellant] were upset that the drugs they had purchased from [victim] Baker were not what they thought they were. [Appellant argues that t]he testimony throughout the trial indicated a pattern of alcohol usage by persons in the house along with regular drug usage.

*Id.* at *5 (quoting Appellant's brief on direct appeal). In affirming the trial court's ruling, we stated that:

> Dr. Guzzardi's opinions were based solely on Appellant's account of his purported intoxication. Appellant did not testify in this case and, therefore, similarly to [*Commonwealth v. Towles*, 106 A.3d 591 (Pa. 2014)], Appellant could not use Dr. Guzzardi as a conduit for hearsay to introduce Appellant's story into the record. Moreover, Appellant simply has not shown there was other

evidence to support Dr. Guzzardi's opinions. Appellant admits that the evidence presented at trial showed only that it was **possible** or **likely he could have** ingested drugs and alcohol throughout the evening. Even the circumstantial evidence Appellant cites in his appellate brief – burned aluminum foil in a common area of the house where the crimes originated, narcotics witnessed in front of the co-defendant, and/or a purported dispute with the victim over narcotics - does not support Dr. Guzzardi's proffered opinion that it was highly likely that Appellant's intoxication overwhelmed him to the point of losing his faculties and sensibilities.

*Id.* at *6 (emphasis in original).

On July 25, 2023, Appellant filed, *pro se,* a timely PCRA petition alleging that trial counsel was ineffective for not having "toxicology screens or tests performed" on Appellant to establish that he "was unable to think consciously when [he] committed the crime" or support the admission of the expert opinion. Appellant's PCRA Petition, 7/25/23, 4. Counsel was appointed. Appellant filed motions seeking leave to obtain an expert on forensic toxicology on January 12, April 24, and May 7, 2024. Each motion was denied by the PCRA court. An evidentiary hearing was held on October 21, 2024, at which trial counsel and Appellant testified. The PCRA court denied relief by written opinion filed on November 12, 2024.

Appellant filed a timely appeal and complied with the PCRA court's order to file a concise statement of errors to be complained of on appeal. **See** Pa.R.A.P. 1925(b). The PCRA court filed a "Statement in Lieu of 1925 Opinion" on January 10, 2025 ("PCRA Court Opinion"), including, as exhibits, its written orders denying funds for an expert.

Appellant presents the following issues for our review:

1. Whether the [PCRA] court erred as a matter of law or abused its discretion in denying the petitioner's PCRA petition which asserted [trial] counsel was ineffective for failing to properly preserve the petitioner['］s defense of intoxication.

2. Whether the [PCRA] court erred as a matter of law or abused its discretion in denying the petitioner's request to have a toxicologist exam the petitioner's hair sample taken by the [C]ommonwealth.

Appellant's Brief, 5.

In his first issue, Appellant alleges trial counsel's ineffective assistance for having "failed to preserve [his] defense of intoxication." Appellant's Brief, 9. To be more precise, Appellant alleged in the PCRA court that trial counsel failed to seek testing of Appellant's hair sample taken at, or near, the time of his arrest, to determine the pervasiveness of his drug use. **See** N.T. PCRA, 10/21/24, 24.[2] He contends that counsel was ineffective, because the defense to murder of the first degree of voluntary intoxication requires evidence that the accused was intoxicated to the point of losing his or her faculties or sensibilities, and "[t]rial counsel did nothing to establish this." Appellant's Brief, 10-11. Instead, trial counsel "relied solely on his expert to provide that

_____

[2] At the PCRA hearing, counsel limited the nature of the claim raised in the petition and the scope of the hearing to trial counsel's failure to present enough evidence to support admission of the expert's report through means other than having Appellant testify. **See** N.T. PCRA, 10/21/24, 24. As trial counsel explained, he advised Appellant against testifying because he would be impeached with his past robbery and burglary convictions, and because, if Appellant took the stand, he "would end up testifying in narrative." **Id.**, 6, 12-13, 15.

evidence," and "provided no evidence of the appellant's demeanor [on] the day of the murder." ***Id.***, 11. There was "[n]o evidence from eye[-]witnesses on whether the appellant appeared so intoxicated to establish that [he lost] his facilities [on] the day of the murder." ***Id.*** "Finally, … counsel was not aware that the Commonwealth had taken hair from the appellant that may have established additional evidence of drugs in the appellant's system[.]" ***Id.***

In appeals involving the denial of PCRA relief, we apply a well-settled standard of review:

> We review the denial of PCRA relief to decide whether the PCRA court's factual determinations are supported by the record and are free of legal error. When supported by the record, the PCRA court's credibility determinations are binding on this Court, but we apply a *de novo* standard of review to the PCRA court's legal conclusions.

***Commonwealth v. Brown***, 196 A.3d 130, 150 (Pa. 2018) (internal citations omitted and italics supplied). As Appellant's claim is one of ineffective assistance of trial counsel, we apply the following well-established set of precepts:

> [C]ounsel is presumed to be effective, and the petitioner bears the burden of proving to the contrary. To prevail, the petitioner must plead and prove, by a preponderance of the evidence, the following three elements: (1) the underlying claim has arguable merit; (2) counsel had no reasonable basis for his or her action or inaction; and (3) the petitioner suffered prejudice as a result of counsel's action or inaction. With regard to the second prong (reasonable basis), "we do not question whether there were other more logical courses of action which counsel could have pursued; rather, we must examine whether counsel's decisions had any reasonable basis." We will hold that counsel's strategy lacked a reasonable basis only if the petitioner proves that a foregone alternative "offered a potential for success substantially greater

- 7 -

than the course actually pursued." Our review of counsel's performance "must be highly deferential." To establish the third element (prejudice), the petitioner must show that there is a reasonable probability that the outcome of the proceedings would have been different but for counsel's action or inaction.

**Brown**, 196 A.3d at 150-51 (internal citations omitted).

Addressing the requirements for a diminished capacity defense to murder of the first-degree, the PCRA court recognized that the mere fact of voluntary intoxication does not give rise to a diminished capacity defense but requires a defendant to show he was overwhelmed to the point of losing his faculties and sensibilities. **See** PCRA Court Opinion, 6 (citing **Commonwealth v. Padilla**, 80 A3d 1238, 1263 (Pa. 2013)). The court then reviewed the evidence from the PCRA hearing, as follows:

> [trial counsel] testified that he did not obtain a toxicology report because he believed [it] could not establish that [Appellant's] intoxication level was such that he lost his faculties at the **particular time** the murder occurred. Trial counsel noted that while a toxicology report may show evidence of frequent drug usage, a toxicology report of a hair sample cannot credibly show [Appellant's] intoxication level at a specific time. Further, the indication of drug use alone does not necessarily mean a loss of faculties and sensibilities. Dr. Guzzardi was provided all of the evidence and discovery material regarding the case and never requested a hair toxicology test be conducted. [Trial counsel] was not required to disregard Dr. Guzzardi's findings and search for another expert willing to testify differently.

PCRA Court Opinion, 6 (emphasis in original). In addition, the PCRA court explained:

> [i]It would have been impossible for trial counsel to obtain a reliable toxicology report from [Appellant] closer to the time of the murder. [Appellant] was arrested on October 28, 2017. Law enforcement officials only obtained DNA evidence from [Appellant's] hair and fingernails. Trial counsel was not appointed

until November 3, 2017. The level of drug or alcohol usage would have dissipated by the time trial counsel could have arranged for a reliable toxicology test like a blood sample. Without specific test results, an expert is unable to opine on the specific impact of the drug or drugs on an individual's sensibilities and faculties at the time of the murder.

*Id.*, 7.

We have reviewed the record and determined that the PCRA court's conclusions are amply supported. Trial counsel was fully aware of the requirement to provide a factual basis for Appellant's drug and alcohol usage prior to the murder in order to introduce the retained expert's opinion. *See* N.T. PCRA, 10/21/24, 6. Counsel discovered at the time of his appointment that no toxicology test was conducted on Appellant at the time of his arrest, which itself occurred some 10 to 12 hours after the murder. *Id.*, 9. Therefore, given Appellant's decision not to testify, consistent with trial counsel's advice, Appellant's high level of intoxication at the time of the murder had to be proved circumstantially, if at all. *Id.*, 6, 10. Trial counsel did investigate witnesses at the location where Appellant was allegedly consuming drugs and alcohol and questioned them at trial to elicit some evidence of Appellant's drug and alcohol use prior to the murder. *Id.*, 10-11. However, as discussed in detail on direct review, the witnesses could not provide sufficient evidence to support a finding that Appellant was so intoxicated he could have lost his faculties. *See Kennedy*, 272 A.3d 497, at *5.

Contrary to Appellant's assertion, trial counsel also was aware the police possessed a specimen that could be tested for DNA; he simply did not recall at the PCRA hearing that it was a hair sample. *See* N.T. PCRA, 10/21/24, 7.

Counsel relied on his expert's advice on whether to seek testing of the hair sample because he understood testing would only have shown Appellant's general drug use for the past month and could not be pinpointed to the time of the murder. *See id.*, 7-8, 11-12. Counsel also tried multiple times to convince the trial court to admit the expert's opinion as "a conduit" to Appellant's testimony about his intoxication without being subject to cross-examination. *Id.*, 11. These attempts were properly rejected by the trial court. *See Kennedy*, 272 A.3d 497, at *6. In short, based on trial counsel's experience and investigation, there was no other evidence that could have been proffered to support Appellant's claim of voluntary intoxication. *See* N.T. PCRA, 10/21/24, 12-13. Appellant, moreover, produced no evidence at the PCRA hearing that trial counsel had failed to introduce at trial. *See* PCRA Court Opinion, 6-7. Thus, we conclude that Appellant's allegation of counsel's ineffective assistance is without arguable merit. *See Commonwealth v. Treiber*, 121 A.3d 435, 445 (Pa. 2015) ("counsel cannot be deemed ineffective for failing to raise a meritless claim"); *Commonwealth v. Davis*, 262 A.3d 589, 598 (Pa. Super. 2021) (similar).

Further, we note that trial counsel believed that, even if the expert's opinion had been admitted, the jury would not likely have been swayed to mitigate Appellant's conviction from murder of the first degree to murder of the third degree, because of extensive evidence that: (1) Appellant beat the victim severely in the apartment; (2) the victim's broken teeth and blood spatter were found; (3) Appellant drove the victim's body to hide it; and (4)

Appellant burned the corpse to destroy any evidence linking him to the murder. *See* N.T. PCRA, 10/21/24, 8. We therefore agree with the PCRA court's additional ruling that Appellant did not demonstrate actual prejudice. *See* PCRA Court Opinion, 7-8 ("Testimony at trial demonstrated [Appellant] went to significant lengths to conceal the commission of the crime contradicting the conclusion he lost his faculties").[3] Accordingly, we conclude that Appellant is not entitled to relief on his first issue.

In his second issue, Appellant argues that the PCRA court erred by denying him funds for a toxicology expert and to test the hair samples seized from him at or near the time of his arrest. *See* Appellant's Brief, 12, 14. He contends that even though the "hair sample would [not] establish exactly what was in the appellant's system the day of the murder nor would [it] establish that the appellant was so intoxicated that he lost control of his facilities," it would lead to evidence that would do so "and aid in establishing counsel's ineffectiveness." *Id.*, 14. "The PCRA court denied the appellant the ability to acquire this evidence and put on the best case for the PCRA petition." *Id.* Appellant asks for a remand "to have an expert test the hair samples in the [C]ommonwealth's possession." *Id.*

In a non-capital PCRA proceeding, "no discovery shall be permitted at any stage of the proceedings, except upon leave of court after a showing of

---

[3] Additionally, PCRA counsel admitted to the PCRA court that even if Appellant could prevail on his first allegation with additional evidence of voluntary intoxication, it would not disturb the jury's verdict that Appellant was guilty of murder in the second degree. *See* N.T. PCRA, 10/21/24, 21-22.

exceptional circumstances." Pa.R.Crim.P. 902(E)(1). "[I]t is for the trial court, in its discretion, to determine whether a case is exceptional and discovery is therefore warranted." **Commonwealth v. Frey**, 41 A.3d 605, 611 (Pa. Super. 2012). "We review the denial of a discovery request in post-conviction proceedings for an abuse of discretion." **Commonwealth v. Chambers**, 807 A.2d 872, 889 (Pa. 2002) (quoting **Commonwealth v. Lark**, 746 A.2d 585, 591 (Pa. 2000)).

> We will not disturb a court's determination regarding the existence of exceptional circumstances unless the court abused its discretion. An abuse of discretion is not a mere error in judgment. Instead, it is a decision based on bias, ill will, partiality, prejudice, manifest unreasonableness, or misapplication of law. Moreover, we recall that the appellant has the duty to convince us an abuse occurred.

**Frey**, 41 A.3d at 611.

Here, Appellant requested three times that the PCRA court grant fees to hire a forensic toxicology expert to test the hair samples taken from Appellant at the time of his arrest. The PCRA court denied the request each time. In the first denial, the PCRA court explained that "PCRA counsel's request fails to demonstrate how the appointment of another forensic toxicologist would assist in preparation for a PCRA hearing and uncover any newly-discovered evidence." Order, 1/24/24. Appellant subsequently alleged that testing the hair follicles "will show all substances in the subject's system from a month before the hair samples were taken. … After that[,] the petitioner would use the petitioner's testimony to say what he had [taken or consumed] around the murder." **See** Appellant's Motion for Expert, 4/24/24, ¶¶ 4-5. After a hearing

on this request, the PCRA court denied the motion for expert fees because Appellant was "unable to show how the expert report would indicate [his] intoxication level … at the time of the murder overwhelmed [him] to a point of lessening his faculties and sensibilities." Order, 5/22/24.

At the PCRA hearing, the following discussion between the court and PCRA counsel took place:

> THE COURT: I think I've asked at prior hearings, and I'll ask again for the purposes of clarifying the record, whether or not there was an expert that would be able to utilize a hair sample [to] be able to point to the date and time that is of relevance to the time in which the murder was occurring? Would they be able to testify that, based on the analysis of the hair follicle, that using the term of art, that he could not have his faculties or sensib[ilities] about him that would trigger the voluntarily intoxication or diminished capacity defense that would therefore mitigate Murder One down to Murder Three? When I inquired that, if you could find an expert that would be able to do that, you advised the Court, "No." Has that since changed?
>
> [PCRA COUNSEL]: No, Your Honor. The science doesn't permit that in my research and [discussions with] experts.
>
> THE COURT: The science would just indicate a hair follicle that would possibly contain a period of drug usage but could never look at any specific amount?
>
> [PCRA COUNSEL]: It could do specific amounts but it would be a determination of what was in his system in a thirty[-]day period. If you're asking how many grams was actually in his body, no, but if you're asking how strong the drug was they could make it go up and down. It would look over a thirty[-]day period.
>
> THE COURT: Was there any indication that your possible expert would be able to indicate how quickly the body metabolized said drug for it to be in the hair follicle? How much time was needed for that to occur?
>
> [PCRA COUNSEL]: I don't know the complete answer to that. The specific part is it wouldn't be able to tell us. When asked the

question – could you have said, "At the time of the murder this was in his system," it could not do that.

THE COURT: Okay. Isn't that detrimental to an ineffective assistance of counsel claim? [Trial counsel] cannot be held to a standard of providing a defense that did not exist. The expert, as you are indicating, would have been unable to articulate diminished capacity/voluntary intoxication to the point of rendering him unable to be sensible or loss of faculties.

N.T. PCRA, 10/21/24, 25-26.

By counsel's admission, the science did not exist that could provide, from an examination of the hair samples, evidence that Appellant was so intoxicated that he had lost his faculties at the time of the murder. *See* N.T. PCRA, 10/21/24, 25-26. The most that testing the hair *might* prove is that during the month prior to taking the sample, Appellant had consumed certain drugs. This drug use was not in dispute at trial. However, Appellant had to proffer at the PCRA hearing evidence from which the court could infer he was extremely intoxicated **at the time of the murder**, which then could support admission of an expert opinion that he was so intoxicated to a reasonable degree of medical certainty. The PCRA court's denial of the requested expert was a reasonable and rational decision – given the admitted limitations of the evidence that could be produced – because the requested discovery would not support a meritorious PCRA claim or lead to more pertinent evidence. We therefore discern no abuse of discretion in the PCRA court's denial of a fee for a second forensic toxicologist.

Accordingly, we affirm the PCRA court's denial of relief.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 8/13/2025